FREDERICK A. STOKES AND OTHERS, APPELLANTS, *v.* FRANK ALLEN AND JOEL P. WHITE, RESPONDENTS.

*Trade-mark in the title of a publication — what constitutes an infringement thereof.*

In an action brought to restrain the use of the word "life," upon a book published and sold by the defendants, it appeared that the plaintiffs were engaged in publishing an illustrated book called "The Good Things of Life," which consisted of pictorial illustrations taken from a serial publication known as "Life," together with brief sentimental dialogues. The defendants' book was designated "The Spice of Life," and consisted of illustrated pictorials and short dialogues which were taken, not from the serial called "Life" but from a German paper called "The Fliegende Blaetter." Upon the cover of the plaintiffs' book the word "life" was included within quotation marks, but these marks were not used upon the defendants' cover, neither was the color of the lettering similar. The similarity of the books consisted wholly in their size and the color of their binding; in other respects, including their contents, they were wholly different.

*Held*, that as the use of the word "life" on the plaintiffs' book indicated that what was intended to be referred to as "The Good Things" were obtained from a particular source, while no such limitation affected the use of the word by the defendants, that the sense in which the word was used in the two publications was dissimilar, and the use of the word by the defendants in no respect infringed upon its employment by the plaintiffs.

That it was not sufficient to maintain an action to show that purchasers, through inattention, might accept the defendants' publication in the place of that of the plaintiffs; that it was necessary to show that the defendants had employed the word "life" with the same significance, in whole or in part, as that with which it had been employed by the plaintiffs.

Words of common use may be so employed as to acquire a limited additional significance by way of designating a particular article of manufacture or production, and in that sense may be entitled to the protection of the court against an infringement upon such use by others, but when the words signify a fact which others may by the use of them express with equal truth, such others have an equal right to use them for that purpose.

APPEAL by the plaintiffs from a judgment, in favor of the defendants, entered in the office of the clerk of the county of New York on the 18th day of November, 1889, after a trial before the court at Special Term, upon a decision directing that the complaint be dismissed upon the merits, with costs to the defendants and with an extra allowance.

The action was brought to restrain the defendants from publishing and selling a book or publication entitled "The Spice of Life," upon

the ground that it was an imitation and an infringement upon the rights of the plaintiffs in a similar publication entitled "The Good Things of Life," which title was claimed by plaintiffs to have been adopted as a trade-mark for their publication.

*George W. Miller*, for the appellants.

*Elihu Root* and *Samuel B. Clark*, for the respondents.

DANIELS, J.:

The plaintiffs were engaged in publishing and selling an illustrated book called "The Good Things of Life." This book consisted of pictorial illustrations taken from a serial publication known as "Life," together with brief sentimental dialogues under the illustrations themselves. This publication was at first made when the two defendants were partners with the plaintiff Frederick A. Stokes. It was a publication of the plaintiffs John A. Mitchell and Andrew Miller, and the right to dispose of it by way of sale was secured to Stokes and the two defendants. It was published and sold in this manner by Mitchell and Miller, and the firm of White, Stokes & Allen, from May, 1884, until the firm of White, Stokes & Allen was dissolved in April, 1887. And by the articles of dissolution the property, business and good will of the firm was transferred by the other two partners to Frederick A. Stokes. And the other plaintiff Horace Stokes joined his brother, Frederick A. Stokes, as a partner in this business in the fall of 1887. The pictorial illustrations contained in the volume designated "The Goods Things of Life" were compilations wholly taken from the paper called "Life." After the dissolution of the firm of White, Stokes & Allen, White and Allen carried on business for themselves as partners, and published a book in its size and color of binding quite similar to the book called "The Good Things of Life." But the defendants' book was designated "The Spice of Life." This book consisted of illustrated pictorials and short dialogues, and sentiments referring to or explanatory of the illustrations. But these illustrations and sentimental statements were not taken from the serial called "Life," but they were reproductions from a German paper called "The Fliegende Blaetter." Upon the cover of the plaintiffs' book the word "life" was included within quotation marks, but these marks

did not attend the use of the word "life" on the defendants' book. Neither was the color of the lettering similiar upon the defendants' book to that employed in coloring the lettering on the plaintiffs' book. And additional embellishments upon a gilt groundwork were given upon the cover of the latter beyond and different from those made upon the cover of the former. The similarity of the books consisted wholly in their size and the color of the binding. In other respects they were different, including their contents.

The action brought by the plaintiffs was to restrain the use of the word "life" upon the book published and sold by the defendants. And it was held at the trial that the plaintiffs had no such title to the use of this word as would authorize them to maintain the action. And it appears by the proof that the use to which the word has been applied upon the defendants' publication, differs from its employment from that made of it on the plaintiffs.

The letters forming the word are nearly, if not quite, double the size on the plaintiffs' book of those used in the formation of the word upon the defendants' book. And the quotation marks employed by the plaintiffs, as attendants of the word "life," indicate that what was intended to be referred to as "The Good Things" were obtained from some particular and specific source, while no such limitation affects the use of the word by the defendants, but it has been employed in its general sense without restriction or qualification. And it is evident from these dissimilarities that the plaintiffs have employed the word "life" in a sense differing from that in which it has been employed by the defendants. And the use of it by the latter in no respect infringes upon its employment on the book of the former. The plaintiffs have employed it to indicate and include selections from the serial known as "Life." The defendants have employed it to indicate pictorial illustrations and sentiments of an entirely distinguishable character, illustrative of comical and sentimental representations of life in general. And as this was a word of popular use and significance, there seems to be no substantial legal reason which would stand in the way to prevent the defendants from employing it in this manner.

It may properly be conceded that words of common use may be so employed as to acquire a limited additional significance by way of designating a particular article of manufacture or production,

and in that sense be entitled to the protection of the court by way of injunction against infringement by another person or persons. (*Royal Baking Powder Co. v. Sherrell*, 93 N. Y., 331; *Taylor v. Gillies*, 59 id., 331; *Hier v. Abrahams*, 82 id., 519.) But the law has not been, neither does nor could it practically be, extended any farther than that. And it, therefore, has been held that " words are but symbols. When they are used to signify a fact, or when, with what purpose soever used, they do signify a fact which others may by the use of them express with equal truth, others have an equal right to them for that purpose." (*Caswell v. Davis*, 58 N. Y., 223, 235.)

And this was followed in *Colman v. Crump* (70 N. Y., 573). And the rule applicable to this class of cases was subjected to the same qualification in *Manufacturing Company v. Trainer* (101 U. S., 51). It was there said, with the approval of the court, that a person " has no right to appropriate a sign or symbol which, from the nature of the fact it is used to signify, others may employ with equal truth, and, therefore, have an equal right to employ for the same purpose." (*Id.*, 54.) And as much as that was conceded by the plaintiffs' counsel upon the trial, for it was stated by him that " we do not claim any exclusive right to the use of the word life." And that concession was substantially a concession that the plaintiffs had no substantial ground to stand upon in the maintenance of their action. For while they used the word " life " for one object, the defendants, without intrenching in the least degree upon that use of it, employed it for another and a different object. By the plaintiffs it was used in a specific and limited sense, while the defendants used it in its general sense, each expressive of a work having no common origin, compiled from different sources and illustrated by different pictorials and sentiments.

It is not sufficient to maintain the action that purchasers inattentively might accept the defendants' publication in place of the plaintiffs. But it is necessary to maintain their action that the defendants should have employed this word " life " with the same significance, in whole or in part, as it has been employed by the plaintiffs. And that, from the proofs, it is clear they have not done. They were, therefore, entitled to have the disposition made of the case which was directed at the trial.

An exception was taken to a question asking the witness Scannell for his opinion as to the effect of the resemblance between the books. But it is not necessary to decide whether the question was a proper one or not, for no evidence or answer was obtained from the witness which was in the least degree objectionable.

The judgment from which the appeal has been brought was sustained by the evidence, and it should be affirmed, with costs.

VAN BRUNT, P. J., and BRADY, J., concurred.

Judgment affirmed, with costs.