ISAAC E. CHAPMAN and WILLIAM L. CHAPMAN, Respondents, *v.* L. E. WATERMAN COMPANY, Appellant.

First Department, March 23, 1917.

Judgment — res adjudicata — estoppel — evidence — pleading by supplemental reply prior judgment as an estoppel to counterclaim — trade name — fraudulent use thereof — transfer of right to use own name — injunction — inadequate relief.

Where a plaintiff does not by supplemental reply plead a decree in a prior action by the defendant as an estoppel as to the issues raised by a counterclaim, said decree is not admissible in evidence as a former adjudication.

A judgment in an action is a bar to a re-examination into the facts decided as between the parties thereto or their privies.

In a suit to restrain the defendant from interfering with the rights of the plaintiffs in the use of a trade name, a judgment in a prior action by the defendants against the sales agent of the plaintiffs is not *res adjudicata*, the plaintiffs' rights not being derived from the sales agent and there not

being a mutuality of interest not resting in contract in the subject-matter of the action.

The estoppel of former adjudication is an estoppel by record and is to be determined by the relationship of the parties to the action at and prior to the time of the entry of the decree or to their successors in interest thereafter. There is no election in a party not bound by the judgment to assume as a benefit that which he did not assume as a risk.

Where, in an action by the L. E. Waterman Company, manufacturers of fountain pens, against Arthur A. Waterman, a former member of the plaintiff company, and another, who had formed the "A. A. Waterman Pen Company," for the manufacture and sale of fountain pens, a judgment was entered enjoining the defendants from using any corporate name containing the word "Waterman" on or in connection with fountain pens, but not prohibiting them from indicating that pens made by them were made or prepared or sold for or by Arthur A. Waterman & Company or A. A. Waterman & Company, and thereafter the plaintiff firm became insolvent and its assets and good will were transferred to a third party, and then Arthur A. Waterman took out another patent or patents and organized a new and distinct concern, which continued until financial disaster compelled a repetition of the process, the members of a subsequent partnership so formed, in which A. A. Waterman had no substantial interest but to which he had sought to give the right to use his name, are not privies of the original A. A. Waterman Company so as to be entitled to use the copartnership name permitted by the decree of the court in the case of L. E. Waterman & Company against said partnership, and the further use of said name by them should be restrained.

It is a fraud upon the person, firm or corporation who has established a trade and carried it on under a given name that some other person should assume the same name, or the same name with a slight alteration, or by advertisement or other device conduct the business in such a way as to induce persons to deal with him in the belief that they are dealing with the person, firm or corporation which has given a reputation to the name. It is dishonesty in the use of the name that is condemned and not the use itself.

The transfer to others of the right to use one's name, with knowledge of the existence of another well-known concern using the name which will be injuriously affected thereby, constitutes fraud if the transferror knows the name is to be used.

The sole purpose of Arthur A. Waterman in transferring the right to use his name being to enable the transferee to use it in unfair competition with the L. E. Waterman Company, a judgment providing that pens manufactured by the transferee should be so marked as to make it appear that the firm is "not connected with the L. E. Waterman Company" is inadequate.

Where one has built up a good will and reputation for his goods or business, he is entitled to all the benefits therefrom. Such good will is property, and equity will afford relief from its invasion by another by

unfair use of the name. No one has a. right to avail himself of another's favorable reputation in order to sell his own goods. A demand created by advertisement belongs to the advertiser.

APPEAL by the defendant, L. E. Waterman Company, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on .the 20th day of May, 1915, upon the decision of the court after a trial at the New York Special Term.

The judgment dismissed defendant's counterclaim and granted plaintiffs an injunction.

*Walter B. Raymond,* for the appellant.

*Richard Lee Phillips,* for the respondents.

PAGE, J.:

The action was in equity to restrain the defendant from either directly or indirectly interfering with the rights of the plaintiffs in the use of the words " A. A. Waterman," " A. A. Waterman & Co.," and from bringing any action at law or in equity for damages or for an injunction against any person by reason of the fact of the manufacture or sale by such person of any fountain pen or any part thereof having the words " A. A. Waterman & Co.," and from entering any restraining order in relation to such words, and from publishing or circulating copies of an injunction order granted by the United States Circuit Court of the Northern District of Ohio in the suit of L. E. Waterman Company against Standard Drug Company. The defendant's answer, after denying material allegations of the .complaint, by way of defense and counterclaim, alleged its prior right to the use of the word " Waterman " in connection with the manufacture and sale of fountain pens and claimed the use of that word by the plaintiffs was an unlawful and unfair use of the defendant's trade name and prayed an injunction restraining the plaintiffs from directly or indirectly making, selling, offering for sale or advertising any fountain pen of other manufacture than that of the defendant under the name of Waterman, and for damages.

The facts, as developed by the evidence, and fortunately there is but little controversy as to the essential facts, are briefly as follows:

Lewis E. Waterman in 1883 commenced the business of manufacturing fountain pens. He adopted and used as trade marks and trade names for his pens the word "Waterman's" and "Waterman's Ideal Fountain Pen, N. Y.," and the word "Ideal."

The defendant was incorporated in 1887 and succeeded to the business, good will, trade marks and trade names of Lewis E. Waterman, and has continued in business to the present time. The defendant has expended large sums in advertising these pens and the business has steadily increased and a large and lucrative business has been built up. These fountain pens have become widely known and recognized and are called for by the general public as "Waterman" pens. Thus the name of "Waterman" in connection with fountain pens has been for more than thirty years well known to the trade and general public as indicating the defendant's company and the goods manufactured and sold by it.

Arthur A. Waterman, for some five years prior to February, 1897, was an employee of the L. E. Waterman Company, and while in its employ formed the intention of going into business for himself in the manufacture and sale of fountain pens. He left the defendant's employ in February, 1897, and in May, 1897, went into business with Edward L. Gibson in the manufacture and sale of fountain pens, adopting the name "A. A. Waterman Pen Company," although they were not a corporation. The L. E. Waterman Company brought an action in the Supreme Court, New York county, against Arthur A. Waterman and Edward L. Gibson which resulted in a judgment perpetually enjoining Arthur A. Waterman and Edward L. Gibson, and each of them, and all persons taking or holding under, from or through them, from using the said corporate name or any corporate name containing the word "Waterman" or from advertising the same or employing the same on fountain pens or in connection with fountain pens; also from using in connection with the business of making or selling fountain pens, whether on the holder or gold pen, or on labels, boxes, signs, letterheads, circulars or advertisements, or in any manner whatsoever, the word "Waterman," "Waterman's" or "Watermans'" alone, or the said words

(whether the same be or be not coupled with some further descriptive word or words) in such a collocation with the word pen or fountain pen (whether the same be or be not coupled with some further descriptive word or words) as to indicate that the fountain pens so made and sold are a variety of Waterman's fountain pens. But the defendants were not prohibited from indicating that fountain pens made by them were made or prepared or sold for or by Arthur A. Waterman & Co. or A. A. Waterman & Co.

No appeal was taken from this decree. Immediately after the entry of this decree the firm of A. A. Waterman & Co. (composed of Arthur A. Waterman and Edward L. Gibson) abandoned the use of the trade name ".A. A. Waterman Pen Co." and continued to manufacture and sell fountain pens under the trade name of "A. A. Waterman & Co." as permitted by the said decree. This partnership was dissolved in 1899 by mutual consent and an assignment of the partnership assets and good will of the firm was made to one Rhodes Lockwood, and he was given the right to complete all fountain pens in process of manufacture and to stamp such pens "A. A. Waterman & Company" and he continued to use the said name until he adopted other trade names. Edward L. Gibson continued in business with Rhodes Lockwood. Arthur A. Waterman started in business in March, 1899, making pens of a style distinct from those previously made by A. A. Waterman & Co., marking said pens "A. A. Waterman, maker," and doing business under the name of A. A. Waterman. In May, 1899, Arthur A. Waterman formed a copartnership with Edson E. Dewey, under the firm name of A. A. Waterman & Co. This firm continued until December 1900, when it was dissolved, and all the assets of the copartnership were assigned and transferred to the Colonial Pen Company to satisfy an indebtedness to that company. On January 9, 1901, Arthur A. Waterman entered into an agreement of copartnership with William G. Frazer and Hobart W. Geyer for the manufacture and sale of fountain pens. Arthur A. Waterman contributed to this copartnership one patent, a few tools, an interest in a patent pending, his personal experience in the trade and his name. The firm name of this copartnership was

A. A. Waterman & Co. This copartnership continued in business until May, 1905, when it was dissolved by reason of the recovery of a judgment against William G. Frazer. Frazer and Geyer were at the time of the making of this copartnership agreement officers of the Frazer & Geyer Company, a New York corporation, engaged in the manufacture and sale of pens. The copartnership agreement was on the twelfth day of December modified in such manner that the Frazer & Geyer Company manufactured the fountain pens and A. A. Waterman & Co. became the selling agents therefor, and it was provided that after making certain payments all the receipts of the copartnership should be paid over to the Frazer & Geyer Company.

The plaintiffs during this period first appear in the transaction; they were connected with the Merritt & Chapman Derrick and Wrecking Company, engaged in the transportation and salvage business; they loaned money to, and became interested in the Frazer & Geyer Company. As a result of financial difficulties plaintiffs secured the assets of A. A. Waterman & Co. and of the Frazer & Geyer Company.

On June 12, 1905, an agreement of copartnership was entered into between Arthur A. Waterman, Isaac E. Chapman and William L. Chapman for a term of thirty-six years under the firm name of A. A. Waterman & Co. for the purpose of manufacturing, purchasing and selling pens, fountain pens and other articles. Arthur A. Waterman by this agreement granted to the firm the right to use the name of A. A. Waterman and the firm name of A. A. Waterman & Co. in connection with the manufacture and sale of fountain and other pens perpetually and exclusively, except as thereinafter reserved to said Waterman to make use of said firm name, and thereby conveyed to said firm all the good will then existing and attaching to the name of A. A. Waterman and A. A. Waterman & Co. It also provided that such grant should not be modified or diminished by said Waterman ceasing to have an interest in the said firm under the terms of said agreement or by his death or otherwise. The agreement provides for the division of the continent of North America into two districts, therein delineated, called the eastern and western districts,

and provided that if A. A. Waterman so desires he may do business on his own account under a firm, trade or corporate name of A. A. Waterman & Co. or other suitable name, either alone or with others, in the manufacture and, or, sale of fountain or other pens in the western district provided he shall begin such business before July 1, 1906, in which event he shall have the exclusive right of said western district and the remaining members of the firm shall have the exclusive right to the eastern district, operating under the name of A. A. Waterman & Co.; if Waterman shall exercise the said option on or before July 1, 1906, and establish such business on his own account he shall thereupon cease to have any interest in the firm of A. A. Waterman & Co. created by this copartnership agreement, which said firm shall belong exclusively to Isaac E. and William L. Chapman; and, if said Waterman shall fail to exercise said option before July 1, 1906, all his interest in this firm of A. A. Waterman & Co. shall in like manner cease and determine in all respects the same as if he had exercised said option. The management of this copartnership was vested in the plaintiffs alone. It is provided that any capital contributed to said firm shall be deemed a loan, shall have six per cent interest, and shall be, at the option of the partner advancing the same, repaid before any profits shall be distributed. Although the articles called for an equal sharing of profits and losses, it is conceded that Arthur A. Waterman never received any profits nor was he called upon to contribute to any losses. The agreement further provided that a new corporation, to be called the Modern Pen Company shall be organized, in which the parties hereto shall be interested, which corporation shall be the sole sales agent of this manufacturing firm of A. A. Waterman & Co. and with which selling company A. A. Waterman was permitted to have contract relations.

The Modern Pen Company was incorporated under the laws of West Virginia, and Arthur A. Waterman became a salesman therefor upon commission and assigned to the western district, as described in the copartnership agreement. Arthur A. Waterman did not exercise his option on or before July 1, 1906, and at or about that time ceased to have any further

relations with the firm of A. A. Waterman & Co. or the Modern Pen Company.

Thereafter the L. E. Waterman Company, the defendant herein, instituted suits against the Modern Pen Company in the District Court of the United States for the Southern District of New York, against the Standard Drug Company in the United States Circuit Court for the Eastern Division of the Northern District of Ohio, and against John Saadi in the Supreme Court of the District of Columbia, to restrain the parties defendant in said suits from making or selling fountain pens of any other than the complainants' manufacture, under the name of Waterman or any mark or name in imitation thereof or in close resemblance thereto. The pens particularly designated in said bills of complaint as being sold by the said defendants being those of the manufacture of the plaintiffs herein. In the last two suits above mentioned decrees were entered substantially the same as that issued by the Supreme Court of this State in the action against Arthur A. Waterman and Edward L. Gibson, hereinbefore mentioned.

In the suit against the Modern Pen Company a decree was entered among other things prohibiting the use of the words "A. A. Waterman & Co." or "A. A. Waterman" without the words "not connected with the original 'Waterman' pens" in appropriate juxtaposition therewith. (*Waterman Co.* v. *Modern Pen Co.*, 193 Fed. Rep. 242.) An appeal was taken to the United States Circuit Court of Appeals by both parties, and the decree was modified restricting the defendant to using the name Arthur A. Waterman & Co. instead of A. A. Waterman & Co., and requiring the words "not connected with the L. E. Waterman Co." to be juxtaposed in equally large and conspicuous letters wherever the permitted name was marked upon any fountain pen sold by the defendant, or upon boxes containing such pen or in advertisements thereof. (*Waterman Co.* v. *Modern Pen Co.*, 197 Fed. Rep. 536.) Cross appeals were thereupon taken to the United States Supreme Court, and the decree of the Circuit Court of Appeals was affirmed. (*Waterman Co.* v. *Modern Pen Co.*, 235 U. S. 88.) The learned justice at Special Term has held that this decree is binding upon the parties to this

action, and has perpetually restrained "the defendant L. E. Waterman Company, its officers, agents, servants, attorneys and employees　＊　＊　＊　from bringing any action at law or in equity for damages or for an injunction against any person by reason of the fact of the manufacture or sale by such persons of any fountain pens or any part thereof, bearing the words 'Arthur A. Waterman & Co., not connected with the L. E. Waterman Co.,' and from entering any restraining order in relation to such words."

If the decree in the case of *L. E. Waterman Company* v. *Modern Pen Company* (which hereafter for brevity we will term the *Modern Pen* case) is *res adjudicata* of the issues raised by the counterclaim we cannot further consider the facts relevant to these issues.

The plaintiff did not by supplemental reply plead that decree as an estoppel, hence it was not admissible in evidence as a former adjudication. (*Brazill* v. *Isham*, 12 N. Y. 9, 17; *Lytle* v. *Crawford*, 69 App. Div. 273, 280.) Nor was the decree offered or received in evidence for that purpose as appears from the record. An objection to its admission was made by the defendant's counsel, and the court said: "That is not *res adjudicata*. In what respect is it material in this action?" Plaintiff's counsel responded, "In that it fixes the law and that the plaintiffs are not entitled to a broader judgment in this case than was granted by the Supreme Court of the United States in the action of the L. E. Waterman Company against the Modern Pen Company, the exclusive sales agents of the plaintiff." The court, "And tends to diminish the relief sought for in the complaint; and the court rules that the papers referred to will be received for such specific reason only and for no other purpose whatever." The sole purpose, therefore, of receiving the decree was to reduce the broad prayer for relief in the complaint, by asking merely for the relief that had been granted in the *Modern Pen* case. Upon this theory the terms of that decree were no more than a memorandum specifying the change in the prayer for relief which plaintiff desired. Notwithstanding this limitation the court has given the decree full force and effect as a former adjudication. The decree being in evidence

First Department, March, 1917. [Vol. 176.

and having been so construed by the court at Special Term makes it incumbent on us to consider its effect.

It is elementary that a judgment in an action is a bar to a re-examination into the facts decided as between the parties thereto or their privies.

The decree in the *Modern Pen* case was not entered in a suit between the same parties that are in this action. Nor were the plaintiffs privies of the Modern Pen Company.

The Modern Pen Company was the sales agent of the plaintiffs. The plaintiffs' right to manufacture or sell fountain pens was not derived from the Modern Pen Company nor was there a mutuality of interest, not resting in contract, in the subject-matter of the action. Had the plaintiffs in that action been successful and brought this action against the plaintiffs herein, this plaintiff would not have been estopped by the former judgment from litigating the issues which were considered in the former case.

That the estoppel must be mutual is conceded by the plaintiffs and that such a mutuality of estoppel does not arise from the decree in the *Modern Pen* case is apparently not disputed, for he argues that the plaintiffs herein having offered the decree in evidence as binding upon the plaintiffs it necessarily follows to that extent it is binding on the defendant. The fallacy of this argument is patent. The estoppel of former adjudication is an estoppel by record and is to be determined by the relationship of the parties to the action at and prior to the time of the entry of the decree, or to their successors in interest thereafter.

There is no election, in a party not bound by the judgment, to assume as a benefit that which he did not assume as a risk.

The plaintiffs herein could have assumed the defense of the *Modern Pen* action if they had been vouched in, or they could have intervened and filed an answer and litigated the issues before the court and thus by submitting themselves to the jurisdiction of the court and assuming the risk of an adverse judgment been in position to obtain the benefit of a favorable one. The decree in the *Modern Pen* case is no more *res adjudicata* of the issues in the instant case than were the decrees in the *Standard Drug Company* and the *Saadi* cases (both of these defendants were selling agents of the Modern Pen Com-

pany) *res adjudicata* in the *Modern Pen* case. We are, therefore, at liberty to consider this case upon the merits. Having before us the principal and not the selling agent, and all the parties being citizens of this State, we should adjudicate these issues in accordance with principles of equity that have been repeatedly declared and enforced by the courts of this and other States.

The next claim of the plaintiffs is that they are privies of the original A. A. Waterman & Co., composed of Arthur A. Waterman and Edward L. Gibson, and hence entitled to use the copartnership name permitted by the decree of this court in the case of *L. E. Waterman Company* v. *Arthur A. Waterman and Edward L. Gibson*, hereinbefore mentioned. A mere reading of the facts, as hereinbefore stated, clearly shows that there could be no privity between the plaintiffs and the original firm of A. A. Waterman & Co.

There is no consecutive chain of title to the business. Nor is there any connection, contractual or otherwise, between the various firms that have carried on business under that firm name. In all of the copartnerships prior to the last the only similarity between them was that Arthur A. Waterman was a *bona fide* member of the firm and that it manufactured or sold fountain pens.

The fountain pens were not, however, manufactured under the same patent. As each firm was dissolved its assets and good will were transferred to a third party; this included the patents under which the firm had been manufacturing pens. Then Arthur A. Waterman would take out another patent or patents and organize a new and distinct concern and proceed until financial disaster compelled a repetition of the process. The learned trial justice erred, therefore, in holding that the plaintiffs were privies of the original copartnership of A. A. Waterman & Co., and by reason thereof obtained any right to use the firm name.

We will now consider the right of the plaintiffs in their business of manufacturing and selling fountain pens, to use the name Waterman. It is well settled that " ' every one has the absolute right to use his own name honestly in his own business, even though he may thereby incidentally interfere with and

First Department, March, 1917.          [Vol. 176.

injure the business of another having the same name. In such case the inconvenience or loss to which those having a common right are subjected is *damnum absque injuria.* But although he may thus use his name, he cannot resort to any artifice or do any act calculated to mislead the public as to the identity of the business firm or establishment, or of the article produced by them, and thus produce injury to the other beyond that which results from the similarity of name.'" (*Singer Mfg. Co.* v. *June Mfg. Co.,* 163 U. S. 169, 187. See, also, *Howe Scale Co.* v. *Wyckoff, Seamans & Benedict,* 198 U. S. 118, 136; *Meneely* v. *Meneely,* 62 N. Y. 427.) It is a fraud upon the person, firm or corporation who has established a trade and carries it on under a given name that some other person should assume the same name, or the same name with a slight alteration, or by advertisement or other device conduct the business in such a way as to induce persons to deal with him in the belief that they are dealing with the person, firm or corporation which has given a reputation to the name. It is dishonesty in the use of the name that is condemned and not the use itself. (See *Higgins Co.* v. *Higgins Soap Co.,* 144 N. Y. 462.) These were the underlying principles of the decree in the case of *L. E. Waterman & Co.* v. *Waterman & Gibson.* That decree was not based alone upon the use of a corporate name by the copartnership as the plaintiffs argue, but the use of the name Waterman in association with the word pen. The wrongful use of the corporate name merely emphasized the fraudulent intent. The court further recognized the right of Arthur A. Waterman to personally use his own name. This erroneous assumption of the plaintiffs herein is illuminating, when we consider the agreement made between the plaintiffs and Arthur A. Waterman. It was discussed and decided that they could not use the name of Waterman in the corporation that was to do the business which theretofore had been done by the firm of A. A. Waterman & Co.; therefore the selling agents were given the name of the Modern Pen Company. For the sole purpose of securing the right to use the name of Waterman in their fountain pen business the alleged copartnership agreement was prepared to manufacture the pens that theretofore had been manufactured by the Frazer & Geyer Company.

The agreement purported to form a copartnership between the plaintiffs and Arthur A. Waterman, in which each should share equally in the profits and losses. One of the provisions thereof was that any capital contributed to said firm by any member thereof shall be deemed a loan; shall bear six per cent interest, and shall be, at the option of the partner advancing the same, repaid before any profits shall be distributed. When we consider that the concerns that had transacted the business which this partnership was to take over, had been forced out of existence because of financial embarrassment, and that the plaintiffs were the only ones who could contribute capital to the firm, the impossibility of there being any profits to distribute at the end of the first year was thus rendered certain. The agreement provided that the term of the copartnership should be thirty-six years from the date thereof. Another clause of the agreement provides for the division of the continent of North America into two districts, and Arthur A. Waterman is given the option on or before July 1, 1906, of taking over the western district. If he shall exercise this option he shall cease to have any interest in the said firm, and if he fails to exercise the option he shall also cease to have any interest in the firm. Thus in either event the firm was to belong exclusively to the plaintiffs. Although the term of the copartnership was to be limited to thirty-six years, the right to use the name of A. A. Waterman and the firm name of A. A. Waterman & Co. in connection with the manufacture and sale of fountain pens was granted to this copartnership exclusively and in perpetuity.

The management of the firm's business was vested exclusively in the plaintiffs, while Waterman was allowed to enter "into contract relations with the Modern Pen Company." This high sounding phrase in practice meant that he might become a salesman, working on a commission basis for the Modern Pen Company. From a mere reading of this agreement it is evident that so far as Arthur A. Waterman being a member of the copartnership it was a mere sham and a fraudulent device to give verisimilitude to a condition that did not and could not under the terms of the contract exist. Therefore we are not in this case concerned with the right of a man to use his own name in business, but instead, of the power to give the right

to use his name to a copartnership with which he is to have no substantial interest. It will be noted that this is not the case of one who has established a business and transfers the business and its good will to another. Nothing belonging to the former firm of A. A. Waterman & Co. was transferred to the new firm.

It is well settled that to transfer to others the right to use one's name, when one knows that there already exists another well-known concern using the name which will be injuriously affected by the use of his name, is a fraud if the transferrer knew the name was to be used. (*Burrow* v. *Marceau*, 124 App. Div. 665.)

Had this been the case of a man rightfully using his own name in his business then the decree in the *Modern Pen* case would have afforded the appropriate relief by requiring the pens to be so marked that the fact should appear that although these pens were manufactured by a Waterman firm it was " not connected with the L. E. Waterman Co."

But where the sole purpose of the transfer is to enable the transferee to use the name in unfair competition with another, such a remedy is inadequate, and places the stamp of judicial approval upon a consummated fraud.

The L. E. Waterman Company through a long series of years and by the expenditure of large sums of money in advertising, has made the name Waterman, in connection with the fountain pen business, of great value by creating a demand for pens of its make. The sole value of the name of Arthur A. Waterman lies in the fact that the surname, used in connection with the fountain pen business, allows others to divert the trade from the defendant to the user of the name. The various concerns that Arthur A. Waterman has formed have not been prosperous, nor has he contributed to the value of the name. One after another has gone out of business owing to financial embarrassment.

The evidence in this case is overwhelming that, through the use of the name Waterman by the plaintiffs, substantial trade has been thus diverted from customers purchasing pens of the latter's make in the belief that they were procuring pens of the defendant's manufacture.

Where one has built up a good will and reputation for his goods or business, he is entitled to all the benefits therefrom. Such good will is property, and equity will afford relief from its invasion by another by unfair use of the name. No one has a right to avail himself of another's favorable reputation in order to sell his own goods. A demand created by advertisement belongs to the advertiser. These are all elementary principles of law which have been violated by the plaintiffs in the fraudulent use of the name of A. A. Waterman and A. A. Waterman & Co. The further use of that name by them should be restrained.

Very little need be said of the plaintiffs' application for an injunction. Any right that they might have for such relief is predicated on their right to use the name of Waterman. With loss of the right to use that name their entire case fails.

The findings of the Special Term, inconsistent herewith, are reversed and the decree appealed from reversed, with costs to the appellant, and judgment granted for the defendant, with costs.

CLARKE, P. J., LAUGHLIN, DOWLING and SMITH, JJ., concurred.

Decree reversed, with costs, and judgment ordered for defendant, with costs. Order to be settled on notice.