CROWN PUBLISHERS, INC., et al., Plaintiffs, *v.* DAVID MCKAY CO., INC., et al., Defendants.

Supreme Court, Special Term, New York County, October 2, 1951.

*Arthur E. Farmer* for plaintiffs.

*Walter R. Barry* and *A. Michael Frothingham* for defendants.

HECHT, J. Plaintiffs seek a temporary injunction restraining defendants from publishing, distributing and selling a book called " Baseball Confidential ". Plaintiffs Lait and Mortimer have heretofore written, and plaintiff Crown Publishers, Inc., has published, several books under the titles of " New York Confidential ", " Chicago Confidential " and " Washington Confidential ". These books have been widely advertised, sold and read by the public. In addition, plaintiff Mortimer has written several articles entitled " Underworld Confidential ", " Virginia Hill Confidential ", " Senator Toby Confidential ", " Frank Sinatra Confidential ", and " Maryland Confidential ". Plaintiff Lait has conducted a radio program called " Jack Lait Confidential ".

Defendant Mann has written a book called " Baseball Confidential " which has been published by defendant David McKay Co., Inc. Mann for several years was assistant to Branch Rickey, then president of the Brooklyn Dodgers, and he was the author of a widely read book called " The Jackie Robinson Story " which later was made into a motion picture.

It is plaintiffs' contention that they have a property right in the word " Confidential " when used in the manner they have used it, flowing either from a common-law trade-mark, the acquisition of a secondary meaning or the good will that the distinctive titles using the word " Confidential " have created.

The word " Confidential " is a descriptive one of every day usage. When used in conjunction with " Washington ", " New York ", " Chicago " or " Baseball " it connotes, in common parlance, the inside story of the subject treated by the book. Different persons are qualified to present such exposés depending on the subject matter which obviously could cover a wide range of interests. Since the purpose of a trade-mark is to identify the source of a product, the use of a common descriptive word as a mark has uniformly been held to be insufficient. To hold otherwise would pre-empt large areas of legitimate activity and the facts in the instant case are clearly illustrative of such possibility. The cases cited by plaintiffs dealing with book or play titles all involved the appropriation of the exact title and are therefore inapplicable here.

The next question is whether the method of using the word " Confidential " in conjunction with other words has acquired a secondary meaning. Would the general public identify defendant's book as having been authored by plaintiffs? Plaintiffs have acquired a reputation for presenting the story of the " behind the scenes " working of government, who the person-

alities are and their connections with official and nonofficial personages. This has been the subject matter of their books. To say that the general public on hearing or seeing the title would immediately suppose that plaintiffs authored defendant's book is to assume that any writing concerning the inside story of any activity will be identified with plaintiffs if their peculiar form of title is used.

But there is more to this point than mere similarity of title so as to confuse the source. We are dealing here with books and not the ordinary product in trade. In the first place, people who buy books do so as much from knowledge of the authors as from the title and subject matter of the book. It is much the same as the motivating force in going to a play or motion picture because of the actors who are featured. Secondly, the jackets of the respective books are so dissimilar as not to possibly confuse the public. Those of plaintiffs are similar in set up and even extraneous wording and are totally different from that of defendant. The names of the authors on each are prominently displayed. Defendant's cover refers in large type to the fact that he was the author of " The Jackie Robinson Story ". Finally, defendant has a well-known reputation in the field in which he is writing and his advertising clearly indicates who he is and what he has done in that field. On this motion I cannot say that plaintiffs have shown a clear legal right to the relief sought.

As for the third point raised by plaintiffs, that of a property right in good will, the arguments set forth above on the acquisition of secondary meaning are equally applicable. In the absence of a trade-mark or secondary meaning, insufficient has been shown to justify the granting of a temporary injunction on this theory of action.

Motion denied. Settle order providing for an early trial of the issues.