Abraham J. Gellihoff, J.
Plaintiffs in this action move for an order pendente lite enjoining the defendants from publishing, selling, distributing and advertising a book entitled “John F. Kennedy and PT-109 ’ ’. Plaintiffs contend that the use of that title constitutes unfair competition with them in their sale and distribution of a book entitled “ PT 109 John F. Kennedy in World War II”. “ PT ” means “patrol torpedo” and the combination “ PT 109 ” is the identifying name of a particular patrol torpedo boat that was used during the war.
Both books deal with substantially the same subject matter — the heroic exploits of President Kennedy during World War II while in command of PT boats in the South Pacific, mainly on PT 109. Both books have received the co-operation of the President in their preparation.
The story of the President’s wartime PT boat heroism, particularly on PT 109, has been chronicled many times in books and magazine articles. An article written in 1944 by John Hersey for The New Torher, under the title “Survival”, dealt with the same subject matter.
Plaintiffs’ book is written by Robert J. Donovan, chief of the Washington bureau of the New Torh Herald Tribune, and author of 1 ‘ Eisenhower: The Inside Story, ’ ’ a best seller in 1956. Defendants ’ book is written by Richard Tregaskis, former International News Service correspondent in the South Pacific, and author of “ Guadalcanal Diary,” likewise a best seller.
Plaintiff McGraw-Hill Book Company, Inc. (hereinafter called “ McGraw ”) acquired the exclusive rights to the book written *706 by Robert J. Donovan by an agreement entered into on February 10,1961. The record does not disclose the tentative or working title for the book designated in that agreement. However, on April 17, 1961, there appeared in the 44 Movie Section” of the New York Herald Tribune an item that 44 Warner Bros, has acquired motion picture rights to 4 PT Boat 109 ’ soon to be published by McGraw Hill Co.”
On May 5, 1961 McGraw granted the publisher of Saturday Evening Post the serialization rights to the book for $65,000. The working title was 44 PT Boat-109 ”. The Saturday Evening Post published the story in five weekly installments under the title 4 4 PT 109 The Adventure that Made a President ’ ’, with a note stating: 44 The story of President Kennedy’s war adventures beginning in this issue is from Robert J. Donovan’s book, PT 109: John F. Kennedy in World War II, published this week by the McGraw-Hill Book Company, Inc.”
On May 31, 1961 McGraw gave Warner Bros. Pictures, Inc., an option to purchase the motion picture rights to the book for $150,000. The option was exercised in July, 1961. The working title in the option agreement is 44 PT Boat-109 ”.
On June 7,1961 McGraw sold to the New York Herald Tribune newspaper serialization rights 44 from the book 4 PT 109 ’ by Donovan ”. These rights have earned in excess of $10,000. The articles in the New York Herald Tribune were titled 44 PT-109 ” with the subheading 44 John F. Kennedy in World War II”. A credit line indicated that the serialization— 18 articles — was based on the book 44 PT 109: John F. Kennedy in World War II ”.
McGraw published its book in November, 1961. Book reviews appearing throughout the country refer to the book sometimes under the title 44 PT 109 ” and sometimes under the title 44 PT 109: John F. Kennedy in World War II”. One reviewer in the Herald Tribune does not name the title but refers to its subtitle 44 John F. Kennedy in World War II ”. In the course of his review he states: 44 The story of 4 PT 109 ’ has been told before ’ ’, and 4 4 Although the events involving PT 109 make up the core of the story, the book tells more in accord with its subtitle ”. The best seller list of the New York Times referred to the book as 44 PT 109. Donovan ”.
The first page of the book gives the title as 44 PT 109 ”, and that same title appears twice on the inside rear flap of the dust jacket and on the back page of the dust jacket. The book was copyrighted under the title 44 PT 109 ”. McGraw’s catalogue for the Fall of 1961 refers to the title as 44 PT-109 ”, subtitle 44 John F. Kennedy in World War II
*707 An article in the New York Journal American of January 25, 1962 is entitled “ Young Actor Tested for PT-109 Bole — Peter Fonda as JFK ” and makes reference to “ starring role in PT-109 * * * story of how Mr. Kennedy and ten others survived the sinking of their PT boat ’ ’.
McGraw insists that the title of 'its book is “ PT 109 John F. Kennedy in World War II that such title is distinctive, and that it has acquired wide acclaim and acceptance both by the general public and the trade. McGraw also claims, however, that the general, popular and public acceptance of the title is “PT 109”.
Defendant Bandom House, Inc. (hereinafter called “ Bandom House”), began negotiations for the publication of a book dealing with President Kennedy’s boat heroism during World War II in February, 1961, almost immediately after the President’s inauguration. On February 10, 1961, the vice-president of Bandom House wrote to the associate editor of Life magazine, suggesting a new juvenile book about PT Boat heroes of World War II, including a substantial chapter about President Kennedy. On April 10, 1961 Bandom House wrote Mr. John Hersey, who had treated the subject in the New Yorker article referred to above, suggesting an expansion of the article into a book for juvenile readers.
Not hearing either from Life magazine or Mr. Hersey, Bandom House, in April, 1961, decided to publish such a book for the adult public. However, knowing of McGraw’s plans to publish such a book, they decided to publish their own as a juvenile book as part of their series for juvenile readers known as ‘ ‘ Landmark Books ”. On May 9, 1961 Bandom House contracted with Bichard Tregaskis to write the book, provisionally entitled “ PT Boat 109 (A Landmark Book) The World War II Exploits of President Kennedy ’ ’.
On June 7,1961 Bandom House contracted with the defendant Dell Publishing Co. Inc. (hereinafter called “Dell”) for the publication of the book by Dell in paperback, the title of Bandom House’s book being stated in the contract as “ John F. Kennedy and PT Boat-109 ”. Bandom House has printed 40,000 copies of its book and 16,000 copies have been distributed.
Plaintiff McGraw-Hill has sold to plaintiff Fawcett Publications, Inc. for $125,000 the right to reprint McGraw’s book in paperback under the title “ PT 109 John F. Kennedy in World War II ”, publication of the paperback edition, however, not to commence until November, 1962.
Plaintiffs claim that the title of the planned publication by defendant Bandom House simulates the title of plaintiffs’ book; *708 that such simulation is likely to confuse the general public and the book-publishing industry; that plaintiff McGrraw has invested considerable sums of money in promoting the book to the point where it has become a best seller; that the acts of Random House constitute a deliberate plan and scheme to mislead the trade and the general public, and to pass off their simulated title as the work and property of plaintiff McGrraw, and to appropriate for itself the title “ PT 109 John F. Kennedy in World War II ”. They therefore sue for an injunction, and claim they are entitled to one pendente lite to avoid diminution and dilution of their property rights.
The defendants deny plaintiffs’ accusations. Random House contends that it adopted “ PT-109 ” as part of its title before it had any knowledge of McGrraw’s title; that it could not possibly have intended to appropriate plaintiffs’ good will created by publication of plaintiffs’ book because it had no way of knowing, when it adopted its own title, that plaintiffs’ title would be a success or failure; that there is no likelihood of confusion in the trade or among the public as to which book is plaintiffs’ best seller and which is defendant’s juvenile book; and that Random House has as much right to use the term “ PT 109 ” as part of the title of its book as have the plaintiffs.
The law does not recognize a monopoly of the English language (William Stevens, Ltd., v. Cassell & Co., 29 Times L. R. [Eng.] 272, 30 Rep. Pat. Cas. 199). Words or phrases which have been in common use, which are descriptive or generic, or Avhich constitute the true and generally accepted name by which an article or thing is called, may not be appropriated by anyone to his exclusive use. Words may not therefore be exclusively appropriated as the title of a book. Where, hoAvever, a book has attained such popularity that its title has plainly acquired a secondary meaning, i.e., one suggestive of that particular book, equity will, under the rules of unfair competition, prevent the use of the same title, or a colorable imitation thereof, as descriptive of another and competing book (cf. Warner Bros. Pictures v. Majestic Pictures Corp., 70 F. 2d 310).
The plaintiffs did not coin or originate the expression, name or term “ PT 109 ”. Prior to its use by plaintiffs it was, and is now, utilized as the name of the patrol torpedo boat commanded by President Kennedy during World War II. It has been used in public and private speech, in neAArspapers, magazines, books, periodicals and on the radio. It has become an expression residing in the public domain and plaintiffs cannot, therefore, have a monopoly over its use (cf. Beacon Magazines v. Popular Publications, 248 App. Div. 204; Ball v. Broadway *709 Bazaar, 194 N. Y. 429, 436; Isaacs v. Daly, 7 Jones & Sp. 511; William Wrigley Jr. Co. v. Grove Co., 161 F. 885; Collins v. Metro-Goldwyn Pictures Corp., 25 F. Supp. 781, 784, revd. on other grounds 106 F. 2d 83).
Plaintiffs contend, however, that “ PT 109 ” standing by itself, and “ PT 109 John F. Kennedy in World War II ” have each acquired a secondary meaning to signify plaintiffs’ book.
Secondary meaning has been defined as the meaning which attaches to descriptive words that “have been used so long and so exclusively by one producer with reference to his article that, in that trade and to that branch of the purchasing public, the word or phrase had come to mean that the article was his product ” ( G. & C. Merriam Co. v. Saalfield, 198 F. 369, mod. and affd. 238 F. 1, cert, denied 243 U. S. 651).
The words “ PT 109 ” and “ PT 109 John F. Kennedy in World War II ” have been used so variously and interchangeably in the moving affidavits and exhibits that there is confusion as to whether the statements therein purport to apply to one title or to the other. Hence there is difficulty in determining with some degree of assurance that either title has a secondary meaning. Indeed, the very fact that plaintiffs found it necessary to couple the phrase “ PT 109” with the phrase “ John F. Kennedy in World War II” shows that plaintiffs themselves never intended that “ PT 109 ” standing alone should acquire the status of a secondary meaning identifying it, and it alone, as the title of their book. Whether either or both of these titles have attained a secondary meaning are questions of fact, and the maving papers, certainly as to “ PT 109 ”, are not persuasive that it has attained that secondary meaning which plaintiffs contend for it.
As for “ PT 109 John F. Kennedy in World War II ”, it is a title that is the natural and necessary description of the work. Any secondary meaning that would attach to it “ would be attributable not to the popularity of the title but to the fame of the work or its author; the public will not ordinarily associate such a title with the subject matter of the book but with its author ” (Callman, Unfair Competition and Trade-marks, § 83.2 [b], p. 1596).
On the hypothesis, however, that “ PT 109 John F. Kennedy in World War II ’ ’ has attained a secondary meaning associating it in the minds of the public with plaintiffs’ book, it does not necessarily follow that the Random House title “ John F. Kennedy & PT-109 ” is competing with it unfairly.
Plaintiffs have chosen three names or terms — PT 109, John F. Kennedy, and World War II — which are descriptive or generic, *710 and combined them into a title. But those names or terms still remain publici juris, and may be used by others in their primary descriptive or generic sense (Stokes v. Allen, 56 Hun 526; Caswell v. Davis, 58 N. Y. 223). Plaintiffs concede that they have no monopoly over the subject matter of John F. Kennedy and PT 109. How else, then, can Random House describe the subject matter of its book except by titling it, as it did, “ John F. Kennedy and PT-109 ” ? Equity, however, still will protect plaintiffs’ title if it is found that the Random House title competes unfairly with it.
The basic principle of the law of unfair competition is that no one has the right to represent his goods in such a manner as to deceive an intending purchaser into believeing that he is buying the goods of another (Corning Glass Works v. Corning Cut Glass Co., 197 N. Y. 173, 178-179). “ It is said that nothing less will constitute unfair competition ” (Neva-Wet Corp. v. Never Wet Processing Corp., 277 N. Y. 163, 169). It has also been held that no one has a right to avail himself of another’s favorable reputation in order to sell his own goods (Chapman v. Waterman Co., 176 App. Div. 697).
In recent years the scope of the doctrine of unfair competition has been extended. “ It has been held to apply to misappropriation as well as misrepresentation, to the selling of another’s goods as one’s own, — to misappropriation of what equitably belongs to a competitor ” (Schechter Corp. v. United States, 295 U. S. 495, 532). The controlling question, however, in all cases where the equitable power of the courts is invoked is whether the acts complained of are fair or unfair (Fisher v. Star Co., 231 N. Y. 414, 427).
To succeed in establishing that defendants are unlawfully competing with them, the plaintiffs must, therefore, prove more than a mere similarity of titles. They must also show (a) that there is a reasonable likelihood that the public will be deceived and misled into believing that defendants’ book purports to identify itself with plaintiffs’ (Underhill v. Schenck, 238 N. Y. 7, 20-21; Gotham Music Service v. Denton & Haskins Music Pub. Co., 259 N. Y. 86; National Picture Theatres v. Foundation Film Corp., 266 F. 208); or (b) that defendants are appropriating unto themselves plaintiffs’ property rights in their book (Schechter Corp. v. United States, supra), i.e., that defendants’ use of the title is with the wrongful intent to capitalize on the good will and reputation of plaintiffs’ book (Warner Bros. Pictures v. Majestic Pictures Corp., 70 F. 2d 310, supra; National Picture Theatres v. Foundation Film Corp., 266 F. 208, supra).
*711 At the last session of the Legislature there was enacted still another ground on which one may be protected in the use of a title. Section 368-d of the General Business Law (L. 1961, ch. 583, eff. Sept. 1,1961) now provides: “ Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.”
It is now to be considered, therefore, whether there is a reasonable likelihood of deception, or mistake; whether there has been an appropriation of plaintiffs’ property, i.e., a wrongful intent to capitalize on the good will of plaintiffs’ book; and whether there is likelihood of “ dilution of the distinctive quality” of plaintiffs’ mark or trade name (General Business Law, § 368-d) which they attach to their book.
Random House is publishing its book as part of its Landmark series, intended for readers in the age group of 10 to 15 years. That, in itself, is of no consequence, for the Random House book here involved is intended to be sold to young adult readers. The point is, however, that the Landmark Books are featured and distinguished by a distinctive colophon.
A comparison of the appearance of both books clearly establishes their dissimiliarity. The Landmark Books colophon appears prominently on the book or dust jacket in six different places as follows: on the front page of the dust jacket; on the spine of the dust jacket; on the back page of the dust jacket; on the inside of the dust jacket; on the spine of the book; on the title page of the book. The series name Landmark Books or a Landmark Book (without the colophon) conspicuously appears 14 times, as follows: three times on the inside front flap of the dust jacket; three times on the inside of the dust jacket; five times on the back page of the dust jacket; three times on the inside rear flap.
The Random House colophon clearly appears on the back page of the dust jacket. The name “ Random House ” prominently appears six times, as follows: on the spine of the dust jacket; on the inside front flap of the dust jacket; on the back page of the dust jacket; on the spine of the book; on the title page of the book; on the copyright page of the book.
The front page of the Random House dust jacket is a color drawing of a PT boat under way, on which is superimposed a photograph of President Kennedy as a naval lieutenant in full dress uniform. The title “ John P. Kennedy and PT-109 ” is printed across the upper portion of the jacket. The name of the *712 author, Richard Tregaskis, is printed prominently in the lower right-hand corner in contrasting color and lettering.
The Tregaskis name appears clearly in eight other places on the jacket and on the spine, title page and copyright page of the book.
In contradistinction, with respect to the McGraw-Hill book: The front page of the dust jacket contains the following: a photograph of President Kennedy while in the Navy aboard a PT boat wearing dark glasses and in fatigue uniform; the title “PT 109 ” is printed within a red band running diagonally across the page; the subtitle “ John F. Kennedy In World War II ” appears immediately below the title within a blue band; the name of the author Robert J. Donovan appears immediately below the subtitle within a black band, and in contrasting red lettering there appears after his name the statement ‘ ‘ Author of Eisenhower: The Inside Story”. The name of the author Robert J. Donovan is also clearly set forth in two other places on the dust jacket, to wit, the front flap and the spine. The Donovan name is also clearly set forth on the spine of the book, the second page thereof, the title page and the copyright page. The McGraw-Hill name is conspicuously set forth on the spine and back page of the dust jacket and on the spine and title page of the book.
In summary, anyone desirous of buying plaintiffs’ book — “ PT 109 John F. Kennedy in World War II ”, the best seller by Donovan, cannot possibly be deceived into believing he is getting it when handed a copy of “ John F. Kennedy and PT-109 ” by Tregaskis — certainly not from the book’s appearance.
Nor do the moving papers establish an appropriation of plaintiffs’ property. Random House has as much right to publish a book about John F. Kennedy and PT-109 as have the plaintiffs. And if it wants truthfully to describe the contents of its book the nature of the work dictates the choice of its title. Furthermore, the affidavits indicate Random House’s independent plan to publish a book with the words PT Boat 109, World War II, and President Kennedy as part of the title.— without knowledge of plaintiffs’ plans or the exact title they intended to use.
There remains to be considered whether, because of the similarity of titles, there is likelihood that the “distinctive quality” of plaintiffs’ title may be diluted “notwithstanding the absence of competition between the parties or the absence of confusion as to the source ” of plaintiffs’ book (General Business Law, § 368-d). A distinctive title under which a book is offered to the public may, under certain circumstances, be *713 deemed a “mark” or “trade name” within the meaning of section 368-d of the General Business Law. That section, however, is designed to prevent the dilution of the distinctive qualities of a title, not to ascribe distinctive qualities to the title. The section contemplates a title which is susceptible of being “distinctive”. Under the facts of this case neither “ PT 109 ”— the copyrighted title — nor “ PT 109 John F. Kennedy in World War II ” is such a title, because both such titles consist of descriptive or generic terms, singly or in combination, that are publici juris and incapable of being exclusively appropriated as against the use by others in their primary sense without fraud or deception.
Undoubtedly there will be some confusion between the two titles, but that is not enough to warrant the creation of a monopoly in favor of one title over the other.
In Bliss, Fabyan & Co. v. Aileen Mills (25 F. 2d 370, 372) it is said: “ It is settled, beyond all controversy, that a manufacturer has no right to the exclusive use of a descriptive word in connection with his goods, and if nevertheless he adopts such . a trade-mark, he himself is largely to blame for the confusion which ensues when other manufacturers, with equal right, adopt similar term to describe their products.”
A purchaser desiring to obtain a copy of plaintiffs’ best seller costing $4.95 can hardly be misled into accepting the Random House book costing $1.95. As Mr. Justice William 0. Heoht, Jr., stated in Crown Publishers v. McKay Co. (200 Misc. 905) at page 907: “We are dealing here with books and not the ordinary product in trade. In the first place, people who buy books do so as much from knowledge of the authors as from the title and subject matter of the book. It is much the same as the motivating force in going to a play or motion picture because of the actors who are featured. Secondly, the jackets of the respective books are so dissimilar as not to possibly confuse the public. Those of plaintiffs are similar in set up and even extraneous wording and are totally different from that of defendant. The names of the authors on each are prominently displayed. Defendant’s cover refers in large type to the fact that he was the author of ‘ The Jackie Robinson Story ’. Finally, defendant has a well-known reputation in the field in which he is writing and his advertising clearly indicates who he is and what he has done in that field.”
As regards the defendant Dell, the question is moot inasmuch as it has decided to change the title of its paperback publication to “ John F. Kennedy War Hero
*714 In a case of this nature, plaintiffs have no absolute right to the aid of the equitable powers of the court in advance of trial. It may be withheld in the exercise of a sound discretion as the facts and circumstances of the case may require (Hygeia Water Ice Co. v. New York Hygeia Ice Co., 140 N. Y. 94, 97). “ The court ought not to interfere with the fróedom of conduct of trade and with general business competition. Its power to restrain should be reserved to prevent fraud and imposture” (Munro v. Tousey, 129 N. Y. 38, 43).
In the case at bar “there is no simulation; no illegitimate competition. Competition, perhaps; but no such competition as constitutes fraud or deception or unfairness ” (Collins, J., in Radio Cab Corp. v. Radio Fleet Owners, 150 Misc. 2, 3).
The case will be set down for an early trial upon the payment of fees and a filing of a note of issue waiving all pretrial procedure. If no answer is served prior to the filing of the note of issue, all issues will be' deemed controverted and plaintiffs’ allegations denied, as indicated in the affidavits. The motion is denied.