Jacob Markowitz, J.
Plaintiffs, the representatives of the estate of Grace Metalious, the deceased author of “ Peyton Place ” and “ Return to Peyton Place ”, and plaintiff Pocket Books, Inc., the successor-in-interest to Julian Messner, Inc., publisher of the aforesaid novels, apply for a preliminary injunction to enjoin the defendant Dell Publishing Co., Inc., from publishing, selling, distributing and advertising a book entitled “ The Girl from ‘ Peyton Place ’ ”.
No elaboration appears necessary to establish that the name “ Peyton Place ” constitutes an intangible and incorporeal property interest and that this interest may be vindicated by the novelist Grace Metalious and by the publisher of her novels through their present successors in interest. (See Callmann, Unfair Competition and Trademarks [2d ed., 1950], p. 1592.)
Precise evaluation of this property right need not be attempted here, but for purposes of the matter sub judice, the court notes that the two novels by Grace Metalious (“ Peyton Place” and Return to Peyton Place”) have been so outstandingly popular that the words “ Peyton Place ”, the fictitious name created and employed by Grace Metalious to designate the small town characterized in her two novels, have all but become a part of the language. Indeed, it must be recognized that at the present time the name “ Peyton Place ”, in print or speech, evokes a vivid picture of the distinctive canvas painted by Grace Metalious.
More than 14 million copies of the two Peyton Place novels by Grace Metalious, hard-cover and soft-cover editions, have been sold in the United States. Foreign publication rights have been sold by plaintiffs, and the novels have been published in nine different languages. Under license from plaintiffs, motion pictures based upon and entitled “ Peyton Place ” and “ Return to Peyton Place ” have been produced and exhibited. Indeed, although Grace Metalious died in February, 1964, television rights to produce a series entitled “ Peyton Place ” and based upon the novels by this author were granted subsequent to her death and the productions continue. Moreover, plaintiffs allege that they plan to publish additional sequels to the Peyton Place novels as continuations of the original works, presumably by an author other than Grace Metalious.
*254 The challenged publication is a biography of Grace Metalious, written by her estranged husband in collaboration with June 0 ’Shea. On the title page of the biography the subtitle ‘ ‘ A Biography of Grace Metalious ’ ’ appears immediately after the title “ The Girl from ‘ Peyton Place ’ ”. This subtitle is omitted from the cover of the book. The cover of the biography is easily divisible into four parts: In large yellow print, “ The Girl from ‘ Peyton Place ’ ” with the words “ Peyton Place ” contained within quotation marks; a black and white photograph of Grace Metalious, which photo appears on the back cover of each of the two ‘ ‘ Peyton Place ’ ’ novels by Grace Metalious and in advertisements placed by plaintiff-publisher’s predecessor in interest; in red print above the title the words, “ The stark, revealing true story of Grace Metalious, whose private life was as startling as her world-famous novels ”; and at the bottom, in red print, the words “by George Metalious and June O’Shea”.
Defendant urges that the title ‘‘ The Girl from ‘ Peyton Place ’ ” accurately reflects the content of the subject biography and the essence of Grace Metalious’ life.
No one contests the right of the authors to write and of the defendant publisher to publish a biography of Grace Metalious, nor, of critical significance, do plaintiffs contend that the words “Peyton Place” may not be used per se in a title of such biography. The title of a work by an artist has often been incorporated into the title of a nonfiction work concerning the artist, e.g., “ The Man from Main Street” (a critique of the works of .Sinclair Lewis); “ The Par Side of Paradise” (a biography of F. Scott Fitzgerald); “ The Importance of Being Oscar ” (a biography of Oscar Wilde); “ Son of Any Wednesday ” (a book about Muriel Resnick); “Claire de Lune ” (a book about Claude Debussy) —magazine and newspaper articles about Grace Metalious, which have for their titles used the words “Peyton Place” and have also printed the subject picture of Grace Metalious in connection with these publications.
Plaintiffs recognize this exception to an otherwise absolute interest and specifically state that there would be no objection to the title “ The Girl Who Wrote Peyton Place ”. Bather do they contend that the defendant has committed and is committing an act of unfair competition in that the use of the words “ Peyton Place ” in the subject title and on the subject cover of this biography constitutes an act of misappropriation, misrepresentation and an act violative of section 368-d of the General Business Law. (Section 368-d provides:1 ‘ Likelihood of injury to business reputation or of dilution of the distinctive *255 quality of a mark or trade name shall be a ground for injunctive relief * # * in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.”)
Decisional precedents in this area of the law of unfair competition have enunciated broad guiding principles. (See Dell Pub. Co. v. Stanley Pub., 9 N Y 2d 126; Warner Bros. Pictures v. Majestic Pictures Corp., 70 F. 2d 310; McGraw-Hill Book Co. v. Random House, 32 Misc 2d 704.) The law will redress the excesses of the market place by affording its protective aegis to the title name, mark or other property interest injured by a competitor whose acts transgress the bounds of the “ fair competition ” standards prescribed and safeguarded by equity. To curb the ruthless zeal of the market place, and effectuate adherence to ‘ ‘ fair competition ’ ’, equity will brand as unlawful and mete out appropriate sanctions to acts of: (1) misappropriation, i.e., the taking and use of another’s property for the sole purpose of capitalizing unfairly on the good will and reputation of the property owner; or (2) misrepresentation, i.e., the use (“ palming off”) of another’s property in such a manner as is likely to deceive the public into believing that the goods offered are those of the property owner; or (3) violation of section 368-d of the General Business Law, i.e., the use of another’s property so that there is likelihood of “ injury to business reputation * * * or of dilution of the distinctive quality of a mark or trade name ”.
As acutely perceived by the Court of Appeals (Dell Pub. Co. v. Stanley Pub., supra, p. 133), however, “ even a casual examination of the decisions will indicate that, aside from the broad and well-established principles, not only is precedent difficult to ascertain, but in many instances the decisions seem incompatible * * * Although this type of litigation has been said to present mixed questions of law and fact * # * the emphasis, and rightfully so, we believe, seems to have been placed upon the fact pattern of each situation.”
The fact pattern of the present action does, indeed, defy easy analogy and solution. Although the doctrine of unfair competition has been extended to embrace misappropriation as well as misrepresentation, the touchstone for the exercise of the court’s equity power remains the same, to wit, unfairness. That the use of the words “ Peyton Place ” in the title of the subject biography conveys the meaning created by Grace Metalious and will so enhance the book’s attraction to the public can hardly be denied. Nor can it be denied that, under all the circumstances, the branding of such use, if so facto, as unfair *256 and the judicial restraint of publication prior to trial of the many-faceted issues raised by the present papers would constitute an exercise of discretion incompatible with the very standards of fairness espoused by equity.
Plaintiffs’ proof is weakest where it must be convincing. Although appropriation must be conceded, such appropriation for the title of a biography of Grace Metalious is not automatically metamorphosed into “misappropriation”. Within the context of the present use of “ Peyton Place ”, fraud and imposture, or like elements, emerge as essential ingredients for this transmutation. All of the broad principles of “ unfair competition ” are invoked by plaintiffs, but given their most favorable interpretation, the allegations of misrepresentation and the likelihood of injury to plaintiffs’ reputation require further judicial exploration. Most critical to the determination of the present application, proof of irreparable injury pending the trial of this action, the indispensable predicate for injunctive relief preliminary to trial, is totally inadequate.
A preliminary injunction is a drastic remedy, and the court’s reluctance to so intervene and condemn in this manner and at this stage of the action is heightened by the realization that we are here dealing with a book and not with an ordinary subject of commerce. (Paraphrasing Botein, P. J., in University of Notre Dame v. Twentieth Century-Fox Film Corp., 22 A D 2d 452, 457, affd. 15 N Y 2d 940.) An application for judicial intervention in, and restraint of, a medium of communication involves more than the particular private interests concerned. The public interest in an unhampered flow of ideas and information, a tenet basic to our society, must be weighed and considered, and ultimately prevail, absent proof of unusual circumstances.
Within this framework, the present papers fall short of the burden of proof essential to warrant the extraordinary relief requested, and the application is denied. Defendant has consented to an early trial. Accordingly, plaintiffs may, should they be so advised, settle an order so providing.