**VENETIANAIRE CORPORATION OF AMERICA, Plaintiff,**

v.

**A & P IMPORT CO., a Partnership, Defendant.**

No. 67 Civ. 4802.

United States District Court
S. D. New York.

July 2, 1969.

Temko & Temko, for plaintiff; Harold Sacks, New York City, of counsel.

Harold Einhorn, for defendant.

OPINION

HERLANDS, District Judge:

Plaintiff has moved for an order granting summary judgment, pursuant to Fed.R.Civ.P. 56, in its favor, on its claims of trademark infringement and unfair competition, on the ground that the record in this case shows that there is no genuine issue of material fact requiring plenary trial and that plaintiff is entitled to judgment as a matter of law.

Plaintiff is the owner of the trademark "HYGIENT", duly registered on November 22, 1966 (No. 819,163) on the Principal Register in the United States Patent Office for use in connection with its distribution of plastic mattress covers imported from Taiwan.

Defendant, without authority of plaintiff, commenced using the word "HYGIENIC" in October, 1967, in connection with the distribution of plastic mattress covers it imports from Taiwan. The plastic mattress covers distributed by the parties are substantially identical and are offered for sale, in interstate commerce, through the same selling channels, to the same customers. Each product is encased in a transparent plastic packaging wrapper and ultimately sold to the general public at the retail level.

Defendant advances a number of contentions in opposition to plaintiff's motion. The Court will deal with them seriatim.

I. TRADEMARK INFRINGEMENT

A. IS PLAINTIFF'S TRADEMARK VALID?

Defendant contends that plaintiff is not entitled to relief because the trademark "HYGIENT" is merely descriptive of the goods which it identifies and thus was not entitled to registration on the principal register. See 15 U.S.C. § 1052(e) (1964).

 The trademark "HYGIENT" has been duly registered. Consequently, a strong presumption of validity has attached. E.g., Pastificio Spiga S. P. A. v. De Martini Macaroni, 200 F.2d 325 (2d Cir.1952). Even "where it can be argued with equal force that a mark is descriptive and on the contrary that it is

arbitrary and fanciful, the courts should not overrule the action of the Patent Office to whose care Congress has entrusted the preliminary determination as to whether a mark fulfills the requirements of the statute." Aluminum Fabricating Co. of Pittsburgh v. Season-All Window Corp., 259 F.2d 314, 316 (2d Cir.1958). The Court's independent conclusion is that the word "HYGIENT" is obviously arbitrary and fanciful, and not descriptive. While very similar to the word "hygienic"—a term which would be an aptly descriptive characteristic of plaintiff's goods—the word "hygient" is meaningless. The mere suggestive connotation does not prevent the term from being a valid trademark. Blisscraft of Hollywood v. United Plastics Co., 294 F. 2d 694 (2d Cir.1961). The Court rules, as a matter of law, that plaintiff's trademark "HYGIENT" is valid, and was properly registered in the principal register.

## B. HAS PLAINTIFF'S TRADEMARK BEEN INFRINGED?

### 1. Likelihood of Confusion

Whether the word "HYGIENIC" is so confusingly similar to the trademark "HYGIENT" as to warrant issuance of an injunction is technically a question of fact. Nevertheless, it is well settled that the issue is one for the Court to decide through its own analysis, comparison and judgment and not necessarily on the basis of expert testimony or other evidence offered at a trial. As such, this issue is generally treated as a question of law and is usually appropriate for summary adjudication. See 3 R. Callman, Unfair Competition Trademarks & Monopolies § 82.-3(b) (3d Ed.1969) and cases cited therein.

The two words in this case, in the Court's opinion, are so similar that there is a reasonable probability that consumers will actually be misled as to the source of the goods. The Court's conclusion is based primarily on the near visual identity of the two words—the sole difference between them being

that "HYGIENIC" contains the suffix "ic" while "HYGIENT" ends with the letter "t". Moreover, the word "HYGIENIC" is found on packaging in the same exact configuration and location as that in which the goods identified by "HYGIENT" are sold, and the two products are sold in the same size wrapper, side-by-side, in retail stores. Doubtless, a likelihood of confusion exists.

### 2. Defendant's Use of the Term "HYGIENIC"

Defendant contends that its use of the word "HYGIENIC" is not infringing because it is used "otherwise than as a trade or service mark," and is "a term or device which is descriptive of and used fairly and in good faith only to describe to users the goods or services of such party * * *." 15 U.S.C. § 1115(b) (4) (1964).

It appears to the Court that the determination of whether defendant has, in fact, used the word "HYGIENIC" descriptively and otherwise than as a trade name is a ruling that the Court, in this case, can appropriately make on a motion for summary judgment, because it is a determination made essentially upon objective analysis of defendant's packaging, trade dress, and advertising. Cf. Kiki Undies Corporation v. Alexander's Department Stores, Inc., 390 F.2d 604, 606 (2d Cir.1968).

The Court concludes that defendant has not used the word "HYGIENIC" as a term descriptive of its product but has used the term as a "symbol to attract public attention," and hence as a trademark. See Safeway Stores, Inc. v. Safeway Properties, Inc., 307 F.2d 495, 499 (2d Cir.1962). Defendant—like plaintiff—does try to convey to prospective purchasers of its plastic mattress covers the thought that its product is sanitary. However, the word "HYGIENIC" is neither positioned the same as, nor appears in a type style similar to, the other descriptive terms contained on the packaging. The word "HYGIENIC" is in bold face; the term "anti-bacteria" is not. The word "HYGIENIC" is emblazoned on a white cross which is

superimposed on a red oval, in the center of the package; the words "exclusive" and "anti-bacteria" appear on an angle on each side of "HYGIENIC". "HYGIENIC" appears in type of a much larger size than that used in the descriptive legend. The words which dominate the packaging as a whole are "HYGIENIC" and "MATTRESS COVER".

That the word "HYGIENIC" was intended as a symbol to identify the goods is persuasively demonstrated, as well, by the circumstances that the trade dress of both products are almost completely identical; that the words "HYGIENT" and "HYGIENIC" are positioned and printed precisely alike; and that plaintiff's term "HYGIENT" was clearly intended as a trademark.

In view of the Court's conclusion respecting descriptive or trademark use, it need not consider whether defendant's use was "fair" and in "good faith".

### 3. Does "HYGIENT" Identify a Mattress Cover Filler?

■ Defendant contends that plaintiff is using the trademark "HYGIENT" to identify a mattress cover ingredient, a use not provided for in the registration certificate. Although plaintiff's phraseology in its packaging and advertising might be susceptible of a conclusion that plaintiff has also been using the term "HYGIENT" to refer to the germicide with which it apparently treats its mattress covers (and whether plaintiff did so use the term "HYGIENT" might be a disputed issue of fact), there can be no doubt that plaintiff has continuously used its trademark to identify the mattress cover itself—which is the prior use plaintiff asserts in this action. The use of the same trademark in connection with other products, as a matter of law, does not prevent plaintiff from enforcing its registered trademark with respect to the use for which it was registered.

### 4. Plaintiff's Alleged Warnings to Defendant's Customers

Defendant alleges that plaintiff contacted defendant's customers and warned them respecting distribution of defendant's mattress covers. Defendant claims that "[s]uch conduct constitutes intentional interference with contractual relations and with prospective advantage, and is of such a nature as to defeat any right of plaintiff for equitable relief."

Answer ¶ 18.

■ This defense must be rejected as a matter of law. Since plaintiff had a valid trademark which was infringed by defendant, his warnings to defendant's customers were permitted. Moreover, even if they did constitute interference with contractual relationships and *arguendo* were unlawful, this conduct was defensive in nature and justified by defendant's previous wrongdoing, and thus does not bar equitable relief. *See* 4 R. Callman, Unfair Competition & Trademarks § 87.1(b) (3) at 1754 (2d Ed. 1950).

### 5. The Question of Damages

■ Plaintiff may recover damages for trademark infringement only upon a showing that defendant's infringement was "committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1) (1964). Such wrongful intention is properly proved inferentially by the fact that defendant, after seeing plaintiff's packaging, adopted a trademark and wrapper almost identical to that utilized by plaintiff. *Cf.* Feathercombs, Inc. v. Solo Products Corporation, 306 F.2d 251, 257 (2d Cir.), cert. denied, 371 U.S. 910, 83 S.Ct. 253, 9 L.Ed.2d 170 (1962).

Defendant, however, seeks to negate the implications of this inference by explanatory proof regarding the choice of mark and the close similarity of packaging. In his deposition, Mr. Al Schertzer, a partner of defendant partnership, stated that he chose the word "HYGIENIC" from Webster's Dictionary as the most common word which meant "sanitary". Plaintiff's Affidavit in Support of Motion, Exhibit 8, at page 15. Mr. Schertzer also stated that he received a suggested wrapper from his

sources in Taiwan, which was the normal routine. "Suggestive wrappers are always sent to every importer as to what they would like to use." *Id.* at 13–14. After examination of the wrapper, Mr. Schertzer made changes and approved the use of the sample bag as changed. *Id.* at 14.

Upon analysis, the Court is of the opinion that the explanation of the choice of mark is incredulous, and the "explanation" of the similarity in packaging in no way attenuates the inference of intention to confuse or deceive. The slavish copying of plaintiff's trade dress would indubitably require a finder of fact to conclude, as a matter of law, that defendant, by its imitation of plaintiff's trademark, intended to cause confusion. *Cf.* Kiki Undies Corp. v. Promenade Hosiery Mills, Inc., 411 F.2d 1097, (2d Cir.1969). Thus, plaintiff may recover damages for the trademark infringement.

Plaintiff's motion for summary judgment is hereby granted as to the issue of trademark infringement; the Court will enter an order permanently enjoining defendant from infringing plaintiff's registered trademark "HYGIENT" and from future use of the trademark "HYGIENIC," as such.

Plaintiff has sought the appointment of a Special Master to take evidence and report upon the amount of damages recoverable from defendant. Because there will have to be a trial upon some issues in this case (*see* Part II, infra), the issue of damages can be heard and determined at that trial by the judge.

## II. PLAINTIFF'S CLAIM BASED UPON UNFAIR COMPETITION

Plaintiff contends that the same legal analysis which warrants grant of its motion for summary judgment on the issue of trademark infringement is applicable to the question of whether the Court should grant summary judgment on the issue of unfair competition arising from defendant's detailed copying of plaintiff's trade dress. In essence, plaintiff's position is that the close similarity of defendant's packaging to that of plaintiff's packaging is likely to cause confusion and thus establishes, as a matter of law, that plaintiff is entitled to an injunction restraining defendant from employing plaintiff's packaging or any colorable imitation thereof.

The Court's analysis of the relevant decisions in this circuit does not support plaintiff's contentions in this regard. Although there is considerable confusion in the case law as to what are the appropriate legal principles, and while many opinions are not free from ambiguity on this point, the Court believes that protection is not afforded trade dress under unfair competition law—as distinct from protection given common law trademarks on a theory of unfair competition, or registered trademarks under the aegis of the Lanham Act, 15 U.S.C. § 1051 et seq. (1964)—merely upon a showing of similarity in trade dress which is likely to cause confusion.

Courts in this circuit apparently have granted protection for trade dress only where (1) actual confusion is shown; *e.g.*, Feathercombs, Inc. v. Solo Products Corporation, 306 F.2d 251, 258 (2d Cir.), cert. denied, 371 U.S. 910, 83 S.Ct. 253, 9 L.Ed.2d 170 (1962); or (2) secondary meaning is proven—*i.e.*, plaintiff's packaging was distinctive and unusual (thus identifying the source of the goods) and that purchasers were moved to buy the article because of its source; *e.g.*, Blisscraft of Hollywood v. United Plastics Co., 294 F.2d 694, 697 (2d Cir.1961); or (3) defendant was palming off its goods as those of plaintiff or deceptively diverting plaintiff's customers—*i.e.*, defendant was fraudulently misleading customers or consumers as to the source of goods; *e.g.*, Hygienic Specialties Co. v. H. G. Salzman, Inc., 302 F.2d 614, 621–622 (2d Cir.1962); Speedry Products, Inc. v. Dri Mark Products, Inc., 271 F.2d 646, 648 (2d Cir.1959); or (4) defendant was misappropriating plaintiff's property rights by interfering with confidential or contractual relations, *e.g.* Norwich Pharmacal Co. v. Sterling Drug, Inc., 271 F.2d

569, 572 (2d Cir.1959), cert. denied, 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739 (1960); Continental Casualty Co. v. Beardsley, 151 F.Supp. 28, 43–45 (S.D. N.Y.1957), aff'd, 253 F.2d 702 (2d Cir.), cert. denied, 358 U.S. 816, 79 S.Ct. 25, 3 L.Ed.2d 58 (1958).

 Plaintiff has offered no evidence of actual confusion; the mere conclusion that such confusion is likely to occur because of the similarity of product, trade dress, and trademark, appears to be an insufficient predicate to grant injunctive relief against use of nearly identical packaging.

Plaintiff, heretofore, has not asserted or produced evidence that its packaging has acquired secondary meaning in the minds of consumers. Moreover, this issue apparently is one of fact requiring proof at trial. See, e.g., Jean Patou, Inc. v. Jacquelin Cochran, Inc., 201 F. Supp. 861, 864 (S.D.N.Y.1962), aff'd. 312 F.2d 125 (2d Cir.1963).

Nor does the record presently before the Court adequately establish that defendant, undeniably, has been guilty of palming off its goods as those of plaintiff. The doctrine of palming off, as aforementioned, requires proof of fraud. While the adoption of nearly identical packaging, after the admitted prior examination of plaintiff's wrapper, evidences an intent to confuse and deceive, there is lacking evidence that what was intended has occurred in the past and will occur in the future.

Finally, plaintiff may not support its motion for summary judgment on the unfair competition claim under the rubric of "misappropriation". The case law development of this concept has been fairly well-limited. Manifestly, the uncontested facts of this case do not warrant grant of summary judgment to plaintiff, as a matter of law, upon application of this theory.

That branch of plaintiff's motion for summary judgment seeking a permanent injunction restraining defendant from utilizing plaintiff's packaging or any colorable imitation thereof, is hereby denied.