**J. JOSEPHSON, INC., Plaintiff,**
v.
**GENERAL TIRE & RUBBER CO., Defendant.**

No. 71 Civ. 5372.

United States District Court,
S. D. New York.

July 14, 1972.

Anthony F. Phillips, Robert J. Kheel, Rene V. Murai, Willkie, Farr & Gallagher, New York City, for plaintiff.

Francis J. Sullivan, Richard H. Crowe, Jr., Liddy, Sullivan, Hart, Dan-

iels & Baxley, New York City, Arthur J. Greenbaum, New York City [of counsel], Cowan, Liebowitz & Latman, New York City, for defendant.

### Memorandum Opinion and Order

MOTLEY, District Judge.

Plaintiff J. Josephson, Inc. (Josephson), a manufacturer and distributor of vinyl wallcoverings, among other products, seeks a preliminary injunction against defendant General Tire & Rubber Co. (General Tire), also a manufacturer and distributor of vinyl wallcoverings, enjoining General Tire from engaging in unfair competition with Josephson.[1] The items in question are a line of Josephson's vinyl wallcoverings of striped and textured designs exhibited in a sample book known as "Textures & Stripes", and a similar line manufactured by General Tire displayed in a sample book entitled "fashon: stripes & textures". Whereas Josephson began manufacturing its line in 1968, General Tire initiated "stripes & textures" in November, 1971. Jurisdiction is based on diversity.

■ This is not a case arising under the copyright or trademark laws of the United States: neither Josephson's nor General Tire's designs for striped and textured vinyl wallcoverings are copyrighted, nor is there a registered trademark on the name of either party's line.[2] It is a common law action for unfair competition, and is thus governed by the law of the forum. Flexitized, Inc. v. National Flexitized Corp., 335 F.2d 774, 780 (2d Cir. 1964), cert. denied, 380 U. S. 913, 85 S.Ct. 899, 13 L.Ed.2d 799 (1965).

We hold that Josephson has not made a sufficient showing of the likelihood of success of its claim of unfair competi-

tion, and consequently deny Josephson's motion.

■ Under New York law, proof of secondary meaning attached to plaintiff's product when coupled with a demonstration that defendant's product is confusingly similar to that of plaintiff, will establish a cause of action for unfair competition. Absent secondary meaning, plaintiff may prove that defendant was engaged in one of a number of predatory practices which, per se, amount to unfair competition. These include palming off, actual deception, appropriation of plaintiff's property, and interference with plaintiff's contractual rights, Norwich Pharmacal Co. v. Sterling Drug, Inc., 271 F.2d 569 (2d Cir. 1959).

Josephson here relies on its belief that secondary meaning has attached to its "Textures & Stripes" line, and that General Tire's "stripes & textures" line is confusingly similar in appearance to Josephson's "Textures & Stripes."

■ Secondary meaning refers to the association formed in the mind of the consumer which links an individual product with its manufacturer or distributor. It has been defined as:

"... the meaning which attaches to descriptive words that 'have been used so long and so exclusively by one producer with reference to his article that, in that trade and to that branch of the purchasing public, the word or phrase had (sic) come to mean that the article was his product' (G. & C. Merriam Co. v. Saalfield Pub. Co., 6 Cir., 198 F. 369, mod. and affd. 6 Cir., 238 F. 1, cert. den. 243 U.S. 651, 37 S.Ct. 478, 61 L.Ed. 947)."

McGraw-Hill Book Co., Inc. v. Random House, Inc., 32 Misc.2d 704, 225 N.Y.S. 2d 646, 652 (Sup.Ct.N.Y.Co.1962). See

---

1. This action was originally brought against Richard E. Thibaut, Inc., as well as against General Tire. However, the causes of action against Thibaut (Counts One and Two) were dismissed with prejudice by stipulation of January 27, 1972.

2. The word preceding "Stripes & Textures" on the General Tire sample book —"fashon"—is a registered trademark of General Tire, but "Stripes & Textures" is not registered.

also Hygienic Specialties Co. v. H. G. Salzman, Inc., 302 F.2d 614, 619 (2d Cir. 1962).

However, where the name of a product is made up of generic terms, rather than fanciful terms, there is a heavy burden on a plaintiff attempting to establish secondary meaning for his product, since a monopoly on descriptive words in the public domain will not readily be granted. American Aloe Corp. v. Aloe Creme Laboratories, 420 F.2d 1248, 1251 (7th Cir. 1970), and cases cited therein; Aloe Creme Laboratories, Inc. v. Milsan, Inc., 423 F.2d 845, 849–850 (5th Cir. 1970); Clairol, Inc. v. Gillette Co., 389 F.2d 264, 269–270 (2d Cir. 1968); McGraw-Hill Book Co., Inc. v. Random House, Inc., *supra*, 225 N.Y. S.2d at 655–656. The phrase "Textures & Stripes" in issue here is strictly generic and merely describes the type of wallcoverings included in the "Textures & Stripes" line—that is, wallcoverings with either striped or textured patterns. Josephson has not demonstrated that, in this case, secondary meaning has attached to these descriptive words. It was said by the New York Supreme Court, with regard to the book *PT 109, John F. Kennedy in World War II*, that:

"Plaintiffs have chosen three names or terms—PT 109, John F. Kennedy, and World War II—which are descriptive or generic, and combined them into a title. But those names or terms still remain publici juris, and may be used by others in their primary descriptive or generic sense (citations omitted)."

\* \* \* \* \* \*

"To succeed in establishing that defendants are unlawfully competing with them, the plaintiffs must, there-

fore, prove more than a mere similarity of titles."

McGraw-Hill Book Co., Inc. v. Random House, Inc., *supra*, 225 N.Y.S.2d at 652–653.

The particular patterns of stripes and textures designed by Josephson are not so out of the ordinary as to result in consumer identification of Josephson with the designs in the "Textures & Stripes" sample book.[3] As was said in a case in this Circuit involving two competing soap dishes:

"'Manifestly, a purchaser of this simple and inexpensive household item . . . relies not on the reputation of the producer, but upon the apparent quality and eye appeal of the product itself.' (citation omitted) And as Judge Learned Hand stated almost a half a century ago, 'it is an absolute condition to any relief whatever' on this theory 'that the public cares who does make them, and not merely for their appearance and structure.' Crescent Tool Co. v. Kilborn & Bishop Co., 247 F. 299, 300 (C.C.A.2, 1917); Chas. D. Briddell, Inc. v. Alglobe Trading Corp., supra, 2d Cir., 194 F. 2d 416." Hygienic Specialties Co. v. H. G. Salzman, Inc., *supra*, 302 F.2d at 620.

In all fairness to Josephson, we must say that it admits that most consumers do not associate wallcoverings with particular manufacturers or their sample books. Rather it contends that the retailers and distributors of the wallcoverings are the "consumers" who become well-acquainted with the various sample books of the different manufacturers. These individuals choose the appropriate sample books for wallcovering purchasers who merely indicate the type of pattern and material they desire. It is

---

3. It is significant that Josephson's name is not displayed on the cover of "Textures & Stripes". This is because most distributors demand that the distributor's name be conspicuously printed on the cover of the sample book. It is usually the most prominent name on the cover. (Josephson affidavit ¶ 12, p. 6.)

This characteristic of the wallcovering trade makes Josephson's claim of secondary meaning even more tenuous since it would be the distributor, if anyone, who would be likely to be identified with "Textures & Stripes" by the public.

within the group of distributors and retailers that Josephson claims its "Textures & Stripes" line has acquired secondary meaning, and it is also within this group that Josephson contends that "stripes & textures" has introduced a likelihood of confusion between plaintiff's and defendant's product. (Josephson affidavit ¶¶ 6–11, pp. 3–6.)

A word is in order here concerning the wallcovering trade. In that trade, manufacturers prepare sample books of their products which are sold to distributors, and then to retailers (or directly to retailers) who introduce them to the ultimate consumer. The retailer places orders for particular patterns by the identification numbers of the patterns indicated on the back of each. The orders are filled by the distributor sending the wallcoverings directly to the ultimate consumer. (Gillen affidavit p. 4, Salembier affidavit p. 3.)

Even assuming that the "consumer", for purposes of establishing secondary meaning, is the distributor or retailer of wallcoverings, Josephson has not put forth sufficient evidence to indicate that "Textures & Stripes" has acquired a secondary meaning within this group.

On this issue, it is especially significant that Josephson and General Tire were not the first to use generic names including only the words "textures" and "stripes" in them to describe their products. The name "Stripes and Textures" had been used by Katzenbach and Warren, Inc. in connection with a line of vinyl-finished wallpaper prior to the use of the name "Textures and Stripes" by Josephson. Katzenbach and Warren continues to use this name to refer to its line of wallpaper with striped and textured designs, and it distributes a sample book with "Stripes and Textures" inscribed prominently on the front and back covers. See defendant's exhibits 15 and 16. The presence of this product on the market even before Josephson began selling "Textures & Stripes" substantially weakens Josephson's argument that the name "Textures & Stripes" has ac-

quired secondary meaning, since "Textures & Stripes" would appear to be as likely to call to mind Katzenbach and Warren's product, of older vintage, as Josephson's newer product.

Josephson contends that Katzenbach and Warren's "Stripes and Textures" is irrelevant to whether or not "Textures & Stripes" has acquired secondary meaning because wallpaper is in an entirely different market from vinyl wallcoverings. (Phillips affidavit at ¶ 42, pp. 21–22.) However, General Tire argues that the markets, so far as distributors and retailers are concerned, are the same. (Salembier affidavit at pp. 2–3.) We are inclined to agree with General Tire.

On the issue of confusing similarity, it is not likely that specialists such as retailers and distributors of vinyl wallcoverings would be misled by the similarity between "Textures & Stripes" and "stripes & textures", and General Tire has submitted affidavits to the effect that they are *not* confused. (Dwoskin affidavit p. 2, Salembier affidavit p. 3.) The covers of the two sample books are entirely different, from the type and size of lettering used, to the background color and design. The front cover of the "stripes & textures" sample book has General Tire's registered trademark "fashon" on it, and the General Tire insignia is on the book's spine. Although both books contain textured and striped patterns, no patterns in "Textures & Stripes" are duplicated in "stripes & textures". If we regard vinyl-finished wallpapers as part of the market which includes vinyl wallcoverings, we must conclude that any confusion that might have been introduced by the name "stripes & textures" would already have resulted from the presence of Katzenbach and Warren's line in the market.

Unfair competition can be established under New York law without proof of secondary meaning by showing predatory practices. Josephson's main contention on this subject is that General Tire copied not only the title of its sample

book, but also individual items in the "Textures & Stripes" line, and Josephson's advertisements for the "Textures & Stripes" line. These contentions are wholly without merit: a mere visual inspection reveals that the covers of "Textures & Stripes" and "stripes & textures" look very different; the patterns in each are distinguishable; and the advertisements bear no similarity to each other. (Josephson's exhibits E and H.)

Josephson also makes conclusory allegations that General Tire was attempting to deceive the public into believing that its product was manufactured by Josephson. There is no factual basis to the assertion that General Tire was deceiving customers, or that it was in any way appropriating Josephson's property rights. Hygienic Specialties Co. v. H. G. Salzman, Inc., *supra,* 302 F.2d at 620; Lincoln Restaurant Corp. v. Wolfies Restaurant, Inc., 291 F.2d 302, 303 (2d Cir. 1961), cert. denied, 368 U.S. 889, 82 S. Ct. 143. 7 L.Ed.2d 88 (1961); Norwich Pharmacal Co. v. Sterling Drug, Inc., *supra,* 271 F.2d at 571.

Josephson's motion for a preliminary injunction is accordingly denied.

So ordered.