PERFECT FIT INDUSTRIES,
INC., Plaintiff,

v.

ACME QUILTING CO., INC., Defendant.

No. 77 Civ. 2004 (CBM).

United States District Court,
S. D. New York.

Jan. 15, 1979.

Seidel, Gonda & Goldhammer, P. C. by Arthur Seidel, Roberta Jacobs, Joel S. Goldhammer, Philadelphia, Pa., Fink, Weinberger, Fredman & Charney, P. C. by Gerald Kahn, New York City, for plaintiff.

Posnack, Roberts, Cohen & Spiecens by Alan K. Roberts, Cooper, Dunham, Clarke, Griffin & Moran by John N. Cooper, New York City, for defendant.

MOTLEY, District Judge.

*Findings of Fact and Conclusions of Law*

Plaintiff Perfect Fit Industries, Inc. (Perfect Fit), a Delaware corporation, has brought this suit against defendant Acme Quilting Co. (Acme), a New York Corporation, for false designation under the Lanham Act, 15 U.S.C. § 1125(a), and for unfair competition under New York law. A trial was held by the court. The court finds that Perfect Fit has failed to prove its two causes of action by a clear preponderance of the evidence. Therefore, the court finds for the defendant and makes the following findings of fact and conclusions of law.

*Facts*

Perfect Fit and Acme manufacture and sell fully quilted contoured mattress pads. In 1976 Perfect Fit introduced a new type of mattress pad, which covered both the mattress and the boxsprings. This new product became very popular. The mattress pad was not patented. Approximately four months after Perfect Fit began to sell its new kind of mattress pad, Acme entered the market with a competing product.

Perfect Fit alleges that Acme copied its tradedress in order to confuse customers as to the origin of its mattress pads. Perfect Fit marketed its mattress pads under the name "BedSack", a registered trademark. Acme marketed its product under the name "BedMate", also a registered trademark. Perfect Fit and Acme both sold their mattress pads in clear plastic wrapping into which an insert, or "J-board", is placed so that the insert is visible to the prospective purchaser. The designs of Perfect Fit and Acme's J-boards are very similar. Perfect Fit's insert, Plaintiff's Exhibit 1, is printed in six colors, four colors in the photograph in the center of the insert, and two colors, gold and silver, making up an Art Deco frame around the photograph, which shows a blonde woman in night clothes seated near the head of a mattress covered with the BedSack pad. The name BedSack appears in white. The court finds Perfect Fit's tradedress to be distinctive and memorable.

Acme's insert, Plaintiff's Exhibit 2, also consists of a photograph of a blonde woman in night clothes reclining near the head of the mattress, surrounded by a two-color Art Deco frame. Both inserts have a brown background. Acme's insert has the name BedMate written across it in white letters.

The court not only finds the two inserts very similar, it also finds that Acme deliberately copied the insert being used by Perfect Fit. Acme's graphic artist, Ira Kramer, was retained by Acme to prepare a design for its insert. After he had prepared several designs which were not accepted by Acme, an officer of Acme gave him the insert of Perfect Fit. Kramer then used that design as the basis for his design which was then used by Acme.

Perfect Fit first used this insert in May or June of 1976, when it first introduced the new mattress pad. Acme first used its insert in September of 1976. There are no allegations of trademark or patent infringement here. Rather, Perfect Fit is suing based on violation of its rights in its tradedress.

*Lanham Act Claims*

The Lanham Act provides, at 15 U.S.C. § 1125(a):

"Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or

represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action . . . by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

This law does not forbid Acme from attempting to compete in the manufacture of the new type of mattress covers introduced onto the market by Perfect Fit. Acme may copy and undersell Perfect Fit's product so long as Acme does not falsely designate the origin of its product. This is true even though Acme benefits from a "free ride" due to plaintiff's expense in developing and advertising the product. *Charles D. Briddell, Inc. v. Alglobe Trading Corp.*, 194 F.2d 416, 418 (2d Cir. 1952); *Bose Corp. v. Linear Design Lab., Inc.*, 340 F.Supp. 513 (S.D.N.Y. 1971).

▮▮▮ To recover under the Lanham Act for false designation of origin, the plaintiff must prove that its tradedress had acquired a secondary meaning, that is

"that the primary significance of the term in the minds of the consuming public is not the product but the producer."

*Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 118, 59 S.Ct. 109, 113, 83 L.Ed. 73 (1938). As the court said in *Ralston Purina Co. v. Thomas J. Lipton*, 341 F.Supp. 129, 133 (S.D.N.Y.1972):

"In other words, the consumer, having acquired confidence in the quality of a product through usage, is entitled to protection against imitations marketed by other producers".

Since the court finds that Perfect Fit has failed to prove secondary meaning for its tradedress, the court need not reach the question of whether Perfect Fit proved that there was a likelihood of confusion between the two tradedresses. *Clairol Inc. v. Gillette Co.*, 389 F.2d 264 (2d Cir. 1968).[1]

Perfect Fit submitted no consumer surveys showing identification in the public's mind of Perfect Fit's tradedress with Perfect Fit's mattress covers. Instead, Perfect Fit attempted to establish that its tradedress had acquired secondary meaning by showing its advertising expenditures and the popularity of its product.

An important factor in this case is that Perfect Fit's inserts were in circulation for only four months before Acme entered the market with its similar insert. This is an extremely short time in which to establish secondary meaning in the minds of consumers. In this court's opinion in *Fund of Funds, Ltd. v. First American Fund of Funds*, 274 F.Supp. 517 (S.D.N.Y.1967), the court found that secondary meaning had been established in the relatively short period of three years due to extensive publicity and success of the product. Perfect Fit has been unable to cite a case in which tradedress had acquired secondary meaning in a shorter time than three years. For example, in *Ralston Purina, supra*, one year was found to be too short a time to establish secondary meaning even though four million dollars had been spent in advertising the product. *See also Kellogg Co., supra*, (no secondary meaning even though plaintiff originated term "shredded wheat", used it extensively for thirty years and spent over seventeen million dollars advertising it.) *Compare Sutton Cosmetics (P.R.), Inc. v. Lander Co., Inc.*, 455 F.2d 285 (2d Cir. 1972) (After six years, secondary meaning established); *American Chicle Co. v. Topps Chewing Gum*, 208 F.2d 560 (2d Cir. 1953) (After two years of use of trademark and eleven million dollars worth of advertising, secondary meaning established).

Perfect Fit relies on the fact that it spent $281,000 on advertising in all of 1976 for its mattress covers. However, the court finds that not all of its advertising featured the insert, Plaintiff's Exhibit 1, at issue here, so

---

1. By letter dated November 1, 1978, plaintiff's counsel withdrew plaintiff's claims that there was evidence of actual confusion.

that amount must be reduced somewhat in considering the extent that such advertising would create an identification of the insert with Perfect Fit.

█ It is undisputed that Perfect Fit's mattress covers were popular with the public. However, this does not mean that the *tradedress* made an impression on the public in the four months in which it was used before defendant entered the market. Sales alone cannot establish secondary meaning. *Norwich Pharmacal Co. v. Sterling Drug, Inc.*, 271 F.2d 569, 572 (2d Cir. 1959), *cert. denied*, 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739 (1960); *Remco Industries, Inc. v. Toyomenka*, 286 F.Supp. 948, 953 (S.D.N.Y.), *aff'd per curiam*, 397 F.2d 977 (2d Cir. 1968).

The court finds that the evidence offered by Perfect Fit as to the amount of advertising, given the short time at issue here, and the popularity of the product, is inconclusive, and that Perfect Fit has failed to prove by a preponderance of the evidence that its tradedress had acquired secondary meaning.

█ Perfect Fit argues that this court should dispense with the requirement that it prove secondary meaning and instead protect Perfect Fit's attempts to develop secondary meaning. Perfect Fit is unable to point to any decision by the Second Circuit which established an exception under the Lanham Act to the requirement of secondary meaning if "incipient" secondary meaning is proved. Perfect Fit argues that a court of equity should enjoin predatory practices of the defendant even if no confusion in the minds of consumers is shown. Perfect Fit relies on dicta in *National Lampoon, Inc. v. American Broadcasting Co. Inc.*, 376 F.Supp. 733, 747 (S.D.N.Y.), *aff'd per curiam*, 497 F.2d 1343 (2d Cir. 1974). In that case, the court found that the name "Harvard Lampoon" had been in use for one hundred years and that the name "National Lampoon" had been used by the plaintiff for five years. The court found "strong evidence" of secondary meaning. In dicta, the district court went on to say that even in the absence of such strong proof, "incipient" secondary meaning would have been protected. The court found a deliberate attempt by the defendant to trade on the plaintiff's good will after negotiations over the use of the name "lampoon" broke down. However, this court finds that this situation does not present the same equitable considerations as *National Lampoon*, even if this court were to dispense with the requirement of secondary meaning. After September 1976 when Acme introduced its competing tradedress, Perfect Fit diluted any developing secondary meaning when it began to use some seventeen other inserts for the same mattress cover at issue here. For example, Perfect Fit prepared special inserts for the mattress covers which were sold through certain department stores.

Therefore, the court will not hold Acme liable for false designation of origin under the Lanham Act in light of Perfect Fit's failure to prove secondary meaning for its tradedress.

*State Law Claims*

Perfect Fit has also alleged violations of New York State law against unfair competition. The elements of a cause of action for unfair competition are very similar to the elements of false designation of origin under the Lanham Act.

The New York courts have developed very specific equitable exceptions to the secondary meaning requirement. Perfect Fit did not prove that Acme engaged in any of the specific predatory practices which the New York courts have set out as exceptions to the requirement of proof of secondary meaning. The New York standard was discussed by the Second Circuit in *Norwich Pharmacal Co., supra*, and *Flexitized, Inc. v. National Flexitized Corp.*, 335 F.2d 774 (2d Cir. 1969). As the Second Circuit said in *Norwich Pharmacal*, at 570–71:

"Distaste for sharp or unethical business practices has often caused the courts to lose sight of the fundamental consideration in the law of unfair competition—protection of the public. Added to this standard is a developing body of law

which pertains only to business conduct, namely, that a court of equity will restrain such practices as constitute palming off, actual deception or appropriation of another's property." (Footnotes omitted).

The New York courts have enjoined palming off, *Santa's Workshop, Inc. v. Sterling,* 2 A.D.2d 262, 153 N.Y.S.2d 839 (1956). Acme cannot be said to have palmed off its mattress covers as those of Perfect Fit's. Acme's name "BedMate" was prominently displayed on its insert. As the court said in *Ralston Purina, supra,* at 135:

> "Palming off is an attempt by one person to induce customers to believe that his product is actually that of another; it requires an intent to deceive and proof of actual fraud. *Venetianaire Corp. of America v. A & P Import Co.,* 302 F.Supp. 156, 160 (S.D.N.Y.1969), aff'd, 429 F.2d 1079 (2d Cir. 1970); *Remco Industries, Inc. v. Toyomenka, Inc., supra,* 286 F.Supp. at 954; Restatement of Torts § 717, Comment *a* at pp. 565–66. The mere fact that two products have similarities as to name and packaging does not necessarily establish palming off . . . . [S]o long as the defendant has taken reasonable precautions to distinguish its product from that of plaintiff, a finding of palming off will not be justified. *Kellogg Co. v. National Biscuit Co., supra; Tas-T-Nut Co. v. Variety Nut & Date Co.* [245 F.2d 3, 5–6 (6th Cir. 1967)]." (citations omitted).

The court finds that Perfect Fit has not proven that Acme palmed off its mattress covers as those of Perfect Fit. *Norwich Pharmacal, supra,* 571–72. The other predatory practices condemned by the New York Courts are not at issue here. *See Noma Lites, Inc. v. Lawn Spray, Inc.* 222 F.2d 716 (2d Cir. 1955) (confidential business secrets abused). *See generally* Schultze, *Trade Dress and Unfair Competition,* 43 Brooklyn L.Rev. 654 (1977); *New York State Unfair Competition Law,* 25 Buffalo L.Rev. 241, 262 (1975).

Since the court finds that Perfect Fit has failed to prove secondary meaning and that

Perfect Fit has failed to prove that Acme engaged in a predatory practice condemned by New York State law which would cause the court to invoke its equitable powers, the court finds for Acme on the state law claims as well as the federal claim. *J. Josephson, Inc. v. General Tire & Rubber Co.,* 357 F.Supp. 1047, 1050 (S.D.N.Y.1972) (Motley, J.); *Bose Corp. v. Linear Design Labs, Inc.,* 340 F.Supp. 513 (S.D.N.Y.1971) (Motley, J.).

Therefore, judgment is entered for defendant Acme Quilting Co., Inc., on both claims.

Submit order on notice.

SO ORDERED.