## PERFECT FIT INDUSTRIES, INC., Plaintiff-Appellee,

v.

## ACME QUILTING CO., INC., Defendant-Appellant.

### No. 285, Docket 80–7585.

United States Court of Appeals, Second Circuit.

Submitted after Remand Dec. 18, 1981.

Decided March 5, 1982.

---

**7.** We need not decide on this appeal whether the State defendants have claims over against the City defendants.

Seidel, Gonda, Goldhammer & Panitch, P. C., Arthur H. Seidel, Roberta L. Jacobs, Philadelphia, Pa., for plaintiff-appellee.

Herbert Monte Levy, New York City, for defendant-appellant.

Before FEINBERG, Chief Judge, KEARSE, Circuit Judge, and METZNER, District Judge.*

KEARSE, Circuit Judge:

This case returns to us following our remand of so much of an order of civil contempt entered on June 24, 1980, in the United States District Court for the Southern District of New York, Constance Baker Motley, *Judge* ("June 24 Order"), as imposed on defendant-appellant Acme Quilting Co., Inc. ("Acme"), a contingent $5000 per day fine on account of its contempt of injunctive orders of that court. We remanded for clarification by the district court of the purpose and basis of the fine in order that we might rule on Acme's contention that the amount of the fine was arbitrary and capricious. In light of the district

---

* The Honorable Charles M. Metzner, Senior Judge of the United States District Court for the Southern District of New York, sitting by designation.

court's clarification, we conclude that the court properly imposed the contingent fine in order to compel Acme to comply with the court's injunctive orders and that the amount of the fine was not so high as to constitute an abuse of the court's discretion. Accordingly, we affirm so much of the June 24 Order as has not already been affirmed.

## BACKGROUND

The history of this action is described in detail in two prior opinions of this Court, 618 F.2d 950 (2d Cir., 1980) and 646 F.2d 800 (2d Cir., 1981), familiarity with which is assumed. A summary of the prior proceedings will suffice here.

In April 1977, plaintiff-appellee Perfect Fit Industries, Inc. ("Perfect Fit"), instituted suit against Acme contending that Acme had wrongfully appropriated Perfect Fit's trade dress in designing inserts called "J-boards," which are used by both firms in the marketing of mattress covers. After a bench trial, the district court concluded that Perfect Fit's J-board was "distinctive and memorable," that Acme's J-board was "very similar" to it, and that Acme had "deliberately copied" Perfect Fit's J-board. The district court concluded, however, that Perfect Fit had not proven all the elements necessary to recover under either federal or state law. 484 F.Supp. 643. Perfect Fit appealed, and we reversed in part, holding that Perfect Fit had shown a sufficient likelihood of consumer confusion that, under New York law, it was entitled to injunctive relief. We remanded for entry of an injunctive order prohibiting Acme from using the misappropriated trade dress. 618 F.2d at 955.

On remand, after a hearing and written submissions from the parties, the district court issued an order dated May 19, 1980 ("May 19 Order"), requiring Acme to cease using the offending J-boards immediately and directing Acme to deliver to Perfect Fit's counsel by June 3, 1980, all of the offending J-boards and related materials, and to send, by the same date, recall letters to Acme's customers. Acme failed to take any steps to comply with the May 19 Order

by June 23, and on June 24 the court held Acme in civil contempt. The court's June 24 Order directed Acme to surrender its stock of the offending J-boards and mail the recall letters by June 27, and to surrender J-boards received pursuant to the recall by July 28. In addition, the court imposed a contingent fine of $5000 for each day, subsequent to these new deadlines, that Acme continued its noncompliance with the court's injunctive orders.

Acme appealed from both the injunctive and the contempt orders. We affirmed the injunction and affirmed so much of the June 24 Order as held Acme in contempt. 646 F.2d at 810. However, we remanded the June 24 Order insofar as it imposed the contingent fine, and directed the district court to explain the basis and purpose of the fine, so that we could adequately review Acme's contention that the amount was arbitrary. *Id.* We retained jurisdiction to review the fine following the district court's explication.

### The District Court's Basis for the Fine

On remand, the district court, after hearing from the parties, filed an opinion dated October 20, 1981, explaining its purpose in imposing the contingent fine, its view of the need for a fine of significant size, and the factors it had considered in determining the appropriate amount of the fine. The court stated that the purpose of the fine was to compel Acme to obey the injunctive orders of the court:

The intent of this court in imposing a contingent fine of $5,000 per day in the Order of June 24, 1980, was to coerce the defendant into compliance with the Order of May 19, 1980 as revised by the Order of June 24, 1980. This court found that defendant had willfully failed to even inform itself of the provisions of the final injunctive order which it knew had been entered. A more brazen contempt of court would be difficult to come by.

Although the intent of the Order of June 24, 1980 was, in part, to prevent additional future damage to plaintiff by inducing compliance with the Order of

May 19, 1980, there was no intention to compensate plaintiff for any damage it had suffered to that date. At 3. Observing that prior to the June 24 Order Acme had taken no steps toward compliance with the May 19 Order and had offered no valid excuse for its noncompliance, *id.* at 4, the court concluded that Acme's noncompliance had been "deliberat[e]," *id.* at 6, and "willful," *id.* at 7. Judging that compliance with the court's injunctive orders was necessary to avert future harm to Perfect Fit, *id.* at 5, and future disrespect for the orders of the court, *id.* at 4–5, the court concluded that "compliance with the [injunctive] orders could be achieved only through economic sanction," *id.* at 4.

In determining the amount of the fine to be collected in the event that Acme continued, past the new deadlines, to disobey the court's orders, the court stated that it had considered a number of factors. These included the magnitude of the harm threatened to Perfect Fit in the event of Acme's continued noncompliance, *id.* at 4–5; the fact that Acme is a business enterprise presumably motivated by economic considerations, *id.* at 6; the need to impose a fine sizeable enough to "make it economically unwise for defendant to continue to ignore the provisions of the previous court orders," *id.*; and the seriousness of the burden on Acme, *id.* at 7. In assessing the magnitude of future harm to Perfect Fit, the court noted, *inter alia*, that in the first year after Acme's misappropriation of Perfect Fit's trade dress Acme had sold some four million mattress pads, and it inferred from Acme's sales and its market position that Acme had sufficient market power to inflict great damage. In assessing the burden on Acme, the court noted that its June 24 Order had given Acme time in which to purge itself of its prior contempt with no

fine, *id.* at 2, 7; had imposed the fine only prospectively and contingently, to be collected only if the new schedule were not met, *id.* at 7; and had provided that the fine was to continue only so long as Acme failed to comply, *id.* In addition, the court noted that Acme was a sizeable company with pre-1980 sales exceeding $20 million per year, and concluded that a contingent fine of $5000 per day would not be confiscatory. *Id.* Using Acme's own estimate of the cost of its compliance with the injunctive orders, *i.e.*, $50,000–$100,000, the court concluded that a contingent fine of $5000 per day would make it more economical for Acme to comply than to continue its contempt.[1] *Id.* at 7–8. The court concluded:

> As compliance was the desired result, it was the judgment of this court that the fine as imposed, contingent, yet substantial, would be the most effective remedy for defendant's contempt.

*Id.* at 8.

Following entry of the court's explanatory opinion, the parties filed new briefs in this Court, with Acme pursuing its contention that the amount of the $5000 per day contingent fine was arbitrary and capricious. Acme argues that the amount of the fine is impermissibly burdensome and attacks the validity of the reasons offered by the district court.

## DISCUSSION

 As discussed in our prior opinion, 646 F.2d at 810, a sanction imposed on a party held in civil contempt generally may serve either or both of two purposes: to coerce the contemnor into complying in the future with the court's order, or to compensate the complainant for losses resulting from the contemnor's past noncompliance. *See McComb v. Jacksonville Paper Co.*, 336

---

1. Acme challenges the district court's reference to Acme's own cost estimates because the court had earlier found those estimates unsubstantiated, *see* 646 F.2d at 807 n.8, and possibly overstated by 100–300%. Acme's challenge misperceives the court's frame of reference. The court found that a $5000 per day fine would make it more economical for Acme to

comply with the court's orders even if the cost of compliance were as *high* as Acme had contended. Obviously if the cost of compliance would be significantly lower than Acme's estimates, it would be even more economically attractive to Acme to comply with, rather than to ignore, the court's orders.

U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949); *United States v. UMW*, 330 U.S. 258, 303–04, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947); *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979). When the purpose is compensatory, the order should be fashioned so as to reimburse the injured party for his actual damages. *Id.* at 130. When, however, the purpose is coercive, the district court has broad discretion to design a remedy that will bring about compliance. *See id.; see Powell v. Ward*, 643 F.2d 924, 933 (2d Cir.) *(per curiam), cert. denied,* —— U.S. ——, 102 S.Ct. 131, 70 L.Ed.2d 111 (1981). Several factors should be considered in the exercise of this discretion, including the "character and magnitude of the harm threatened by continued contumacy, ... the probable effectiveness of any suggested sanction in bringing about [compliance]," and the "amount of [the contemnor's] financial resources and the consequent seriousness of the burden to [him]." *United States v. UMW, supra,* 330 U.S. at 304, 67 S.Ct. at 701. *See also International Business Machines Corp. v. United States,* 493 F.2d 112, 116 (2d Cir. 1973) (dictum), *cert. denied,* 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974). Ultimately, however, the overriding consideration is whether the coercive fine was reasonably set in relation to the facts and was not arbitrary.

In the present case, we conclude that imposition of the contingent fine was within the bounds of the court's discretion. It is clear from the terms of the June 24 Order and from the district court's opinion on remand (and it seems not to be disputed by Acme), that the purpose of the fine was coercive. The court's opinion on remand, described in detail above, demonstrates that in fixing the amount of the fine the court

had taken into account the relevant factors: it considered the magnitude of the harm to Perfect Fit that was sought to be averted; it considered the seriousness of the burden on Acme, both in terms of the size of the fine as compared to the size of Acme's business, and in terms of Acme's ability to forestall or end any accumulation of fines simply by complying with the June 24 Order;[2] it considered the need that any fine be substantial enough to make it more economical for Acme to comply than not to comply; and it considered, given Acme's "deliberat[e]," "willful," and indeed "brazen" contumacy, the need for a contingent fine in an amount sufficiently substantial to compel Acme to comply.[3]

Acme's principal attack on the district court's careful explanation of its reasons for imposing the fine is that the district court improperly considered only the volume of Acme's sales in assessing the burden created by the fine. Relying on our observation in *International Business Machines Corp. v. United States, supra,* 493 F.2d at 116, that the $150,000 per day contingent fine there imposed constituted only five percent of the defendants' average daily earnings, Acme argues that the district court should have set the amount of the fine in relation to Acme's daily net profit, which Acme claims was less than $500. This contention must be rejected in the circumstances of this case. Although the profit earned by a contemnor may well be relevant in assessing the seriousness of the burden inflicted by a coercive fine, such profit figures are hardly dispositive. They have their greatest utility in determining whether or not a daily fine that is usually large in absolute amount, such as the $150,000 fine above, is confiscatory. While the $5000 per day im-

---

2. Any suggestion by Acme that compliance with the court's injunctive orders is unduly burdensome is of course, foreclosed in light of our prior decision, 646 F.2d at 805–08, upholding the injunctive order.

3. Acme argues that in fact there was no need for the court to impose an economic sanction in order to coerce compliance. (Acme brief at 3–4, 10.) In light of Acme's willful failure in May 1980 to inform itself of the terms of what

it knew to be an injunctive order against it so that it could commence timely compliance, *see* 646 F.2d at 808–09, and its failure to take a single step toward compliance between June 3, 1980, when it claimed first to have learned the precise terms of the injunction, and June 23, 1980, when the hearing on Perfect Fit's contempt motion was held, *id.* at 805, we find Acme's argument frivolous.

58

posed on Acme is substantial, and intentionally so, we cannot conclude that it is confiscatory simply because Acme's daily profits are modest. Indeed, adoption of Acme's contention would lead to the conclusion that a coercive fine could never be imposed on a company, no matter how contumacious, that was financially troubled.

We believe the district court was entitled to refer to Acme's sales volume of more than $20 million per year and to discount the low level of Acme's claimed profits, in light of the court's conclusion that "given the willful nature of defendant's conduct, a small fine would not have secured compliance." At 7. Thus, although the amount of the fine is high as compared to Acme's claimed profits, we conclude that it was within the discretion of the district court, especially since Acme was given the power to avoid the fine entirely or to end its accrual.

The June 24 Order of the district court is affirmed.